PEOPLE v DIPIAZZA

Docket No. 284946. Submitted August 24, 2009, at Grand Rapids.
    Decided November 3, 2009, at 9:05 a.m.

    Robert L. Dipiazza was adjudicated in the Muskegon Circuit Court,
        Timothy G. Hicks, J., under the Holmes Youthful Trainee Act
        (HYTA), MCL 762.11 *et seq.*, for attempted third-degree criminal
        sexual conduct, MCL 750.92, 750.520d(1)(a), on August 29, 2004,
        with regard to a consensual sexual relationship defendant had
        with his 15-year-old girlfriend when he was 18 years old. He was
        sentenced to probation and required to register as a sex offender
        under the Sex Offenders Registration Act (SORA), MCL 28.721 *et
        seq.* He successfully completed his probation on November 18,
        2005, and, under the terms of HYTA, his case was dismissed and
        he has no conviction on his record, but he continued to be required
        to register as a sex offender. On January 25, 2008, defendant
        petitioned to have his name removed from the sex offender
        registry or, in the alternative, have the period that he was required
        to register reduced from 25 to 10 years. The trial court denied the
        request to have defendant's name removed from the registry but
        granted the request to reduce his period of registration to 10 years.
        Defendant appealed by leave granted.

        The Court of Appeals *held*:

        1. The determination whether legislation provides punish-
    ment, for purposes of the prohibition against cruel or unusual
    punishment, requires consideration of the totality of the circum-
    stances and particularly legislative intent, the design of the
    legislation, the historical treatment of analogous measures, and
    the effects of the legislation.

        2. The Legislature's intent in enacting SORA with its nonpub-
    lic registry was not to chastise, deter, or discipline an offender, but
    rather to assist law enforcement officers and the people of Michi-
    gan in preventing and protecting against the commission of future
    criminal sexual acts by convicted sex offenders. This intent was
    somewhat frustrated when SORA was amended in 1999 to create
    the public sex offender registry that is available to everyone.
    Therefore, SORA was again amended in 2004 to provide that a
    person who is "convicted" no longer included an offender assigned

to youthful trainee status if the assignment occurred after October 1, 2004, unless such status was revoked or an adjudication of guilt was entered. It is incongruous that a teen who engaged in consensual sex and is assigned youthful trainee status after October 1, 2004, was not considered dangerous enough to require registration, but a teen such as defendant who was assigned such status before October 1, 2004, is required to register. The implied purpose of SORA is not served by this requirement.

3. The design of HYTA is that an individual assigned to youthful trainee status shall not suffer a civil disability or loss of right or privilege except to the extent that the individual is required to register pursuant to SORA. Therefore, the registration requirement results in a disability as well as a loss of a right or privilege suffered by defendant.

4. There is no historical antecedent that relates to requiring a defendant to register as a sex offender when the defendant was a teenager engaged in consensual sex and the defendant was assigned to a youthful trainee status after October 1, 1995, when HYTA first required an individual assigned to youthful trainee status to register under SORA, but before October 1, 2004, when the registration requirement was amended.

5. Defendant suffered financial and emotional consequences as a result of being required to register as a sex offender. Given the totality of the circumstances, the registration requirement of SORA, as applied to defendant, constituted punishment.

6. Determining whether a punishment is cruel or unusual requires consideration of the gravity of the offense, the harshness of the penalty, a comparison of the penalty to penalties for other crimes in this state, a comparison of the penalty to penalties imposed for the same offense in other states, and the goal of rehabilitation.

7. The penalty in this case was very harsh although the offense was not very grave.

8. Defendant would not have had to register had he been assigned to youthful trainee status one month later but was required in this case to register along with rapists and pedophiles, and the sex offender registry does not provide a description of an offender's offense to help determine the seriousness of the offense and the threat posed by the offender.

9. States vary widely in how they prosecute consensual teen sex.

10. The registration requirement, as applied to defendant, was excessive and punitive because the registration was not tied to a finding that the safety of the public was threatened.

11. There was no goal of rehabilitation in this case. Requiring defendant to register as a sex offender for 10 years was cruel or unusual punishment that violates Const 1963, art 1, § 16. The order of the trial court must be vacated and the case must be remanded for the entry of an order consistent with the Court of Appeals opinion.

Vacated and remanded.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Tony Tague*, Prosecuting Attorney, and *Charles F. Justian*, Chief Appellate Attorney, for the people.

*Legal Aid of Western Michigan* (by *Miriam Aukerman* and *Kristin Hanratty*) for defendant.

Amici Curiae:

*Christine A. Pagac*, *Michael J. Steinberg*, and *Kary L. Moss* for the American Civil Liberties Union Fund of Michigan, the Jacob Wetterling Resource Center, Stop It Now!, the Association for the Treatment of Sexual Abusers, and the Professional Advisory Board to the Coalition for a Useful Registry.

*Richard B. Ginsberg* for the Criminal Defense Attorneys of Michigan.

Before: SERVITTO, P.J., and FITZGERALD and BANDSTRA, JJ.

FITZGERALD, J. Defendant appeals by leave granted the April 1, 2008, order denying his request to have his name removed from the sex offender registry, but granting his request to reduce his period of registration under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, to 10 years. We vacate the order and remand.

I. FACTS AND PROCEDURAL HISTORY

In 2004, when defendant was 18 years old, he had a consensual sexual relationship with NT, who was nearly 15 years old.[1] NT's teacher discovered a photograph of defendant and NT in bed together and defendant's hand was on NT's breast. The teacher informed the prosecuting attorney.

Defendant was adjudicated under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, for attempted third-degree criminal sexual conduct (CSC), MCL 750.92, MCL 750.520d(1)(a), on August 29, 2004, and was sentenced to probation. Defendant also was required to register as a sex offender. Defendant successfully completed his probation on November 18, 2005, and, under the terms of HYTA, his case was dismissed and he has no conviction on his record. However, defendant continues to remain required to register as a sex offender.

On January 25, 2008, defendant petitioned the trial court asking that his name be removed from the sex offender registry because the requirement to register, as it applies to him, violates the Cruel or Unusual Punishment Clause of the Michigan Constitution, Const 1963, art 1, § 16. In the alternative, defendant requested that the period that he is required to register as a sex offender be reduced from 25 years to 10 years. Defendant argued that, because he was adjudicated under HYTA and successfully completed his probation, he does not have a conviction and so requiring him to register as a sex offender wrongfully identifies him as one who has been convicted of a sex crime. He further

[1] The consensual nature of the sexual relationship is not in dispute. Defendant and NT married in April 2009 and their first child was due in June 2009.

argued that requiring him to register on the public registry is cruel or unusual punishment because it harms his economic livelihood. Defendant also mentioned that, because of amendments to SORA that became effective on October 1, 2004, had he been convicted only six weeks later he would not have had to register on the public registry.[2]

At the hearing on defendant's petition, the trial court stated, "if I had some discretion yours is one of those Romeo and Juliet cases where I would probably grant your relief." However, finding its decision dictated by the holding in *In re Ayres*, 239 Mich App 8; 608 NW2d 132 (1999), on April 1, 2008, the trial court denied defendant's request to have his name removed from the sex offender registry, but granted defendant's request to reduce his period of registration under SORA to 10 years.

II. BACKGROUND

A. HOLMES YOUTHFUL TRAINEE ACT

HYTA is essentially a juvenile diversion program for criminal defendants under the age of 21. Under the act,

> if an individual pleads guilty to a criminal offense, committed on or after the individual's seventeenth birthday but before his or her twenty-first birthday, the court of record having jurisdiction of the criminal offense may, without entering a judgment of conviction and with the consent of that individual, consider and assign that individual to the status of youthful trainee. [MCL 762.11(1).]

An assignment to youthful trainee status does not constitute a conviction of a crime unless the court revokes the defendant's status as a youthful trainee.

---

[2] There are two databases, one accessible only by law enforcement and one accessible by the public.

MCL 762.12. If the defendant's status is not revoked and the defendant successfully completes his or her assignment as a youthful trainee, the court "shall discharge the individual and dismiss the proceedings." MCL 762.14(1). A defendant assigned to the status of youthful trainee "shall not suffer a civil disability or loss of right or privilege following his or her release from that status because of his or her assignment as a youthful trainee." MCL 762.14(2). "Unless the court enters a judgment of conviction against the individual for the criminal offense . . . , all proceedings regarding the disposition of the criminal charge and the individual's assignment as youthful trainee shall be closed to public inspection . . . ." MCL 762.14(4).

Before 1995, various forms of MCL 762.14 existed, none of which required a person assigned to youthful trainee status to register as a sex offender. However, effective October 1, 1995, MCL 762.14 provided that "[a]n individual assigned to youthful trainee status for a listed offense enumerated in section 2 of the sex offenders registration act is required to comply with the requirements of that act." MCL 762.14(3).

### B. THE SEX OFFENDERS REGISTRATION ACT

In 1994, Michigan adopted the Sex Offenders Registration Act.[3] SORA, as first enacted, made registry information confidential and closed to inspection except for law enforcement purposes. Thus, effective October 1, 1995, an offender assigned to youthful trainee status had to register as a sex offender under SORA, but the registry was not public. As of September 1, 1999, however, SORA was amended to create the public sex offender registry (PSOR), which can be accessed by

---

[3] 1994 PA 286, 287, 294, and 355.

anyone through the Internet. The PSOR provides names, aliases, addresses, physical descriptions, birth dates, photographs, and specific offenses for all convicted sex offenders in the state of Michigan. MCL 28.728(4)(a).

Effective October 1, 2004, the definition of "convicted" in SORA was amended to include:

> (A) Being assigned to youthful trainee status under sections 11 to 15 of chapter II of the code of criminal procedure, 1927 PA 175, MCL 762.11 to 762.15, *before October 1, 2004.*
>
> (B) Being assigned to youthful trainee status under sections 11 to 15 of chapter II of the code of criminal procedure, 1927 PA 175, MCL 762.11 to 762.15, *on or after October 1, 2004 if the individual's status of youthful trainee is revoked and an adjudication of guilt is entered.*[4]

Thus, as of October 1, 2004, "convicted" no longer included being assigned to youthful trainee status if the assignment occurred after October 1, 2004, unless such status was revoked or an adjudication of guilt was entered. Because defendant was assigned to youthful trainee status on August 29, 2004, he was considered "convicted" of attempted third-degree CSC for purposes of registering as a sex offender. See *People v Rahilly*, 247 Mich App 108, 115; 635 NW2d 227 (2001) ("[W]hile MCL 762.14(2) provides that the assignment of an individual to youthful trainee status does not result in a conviction, for purposes of the SORA, assignment to youthful trainee status, in fact, constitutes a conviction.").

### III. ANALYSIS

Defendant argues that because he was adjudicated under HYTA he has no conviction under that act and,

---

[4] MCL 28.722(a)(*ii*), as amended by 2004 PA 240 (emphasis added).

therefore, labeling him as a convicted sex offender on the PSOR violates the Cruel or Unusual Punishment Clause of the Michigan Constitution. This Court reviews constitutional questions de novo. *People v Pitts*, 222 Mich App 260, 263; 564 NW2d 93 (1997).

A. DO THE REGISTRATION AND NOTIFICATION REQUIREMENTS<br>OF SORA IMPOSE PUNISHMENT ON DEFENDANT?

In *In re Ayres*, this Court had to determine whether requiring juveniles who had been convicted of certain specified sex offenses to register as sex offenders violated Michigan's prohibition against cruel or unusual punishment. This Court first recited the applicable general rules:

> Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent. The party challenging a statute has the burden of proving its invalidity. [*Ayres, supra* at 10 (citations omitted).]

This Court found instructive "two recent federal court decisions that have held that the registration and notification requirements of Michigan's Sex Offenders Registration Act, as applied to adult offenders, do not impose 'punishment' under the Eighth Amendment of the United States Constitution." *Id.* at 14. This Court quoted *Doe v Kelley*, 961 F Supp 1105, 1109 (WD Mich, 1997):

> "On its face, the notification scheme is purely regulatory or remedial. It imposes no requirement on the registered offender, inflicts no suffering, disability or restraint. It does nothing more than create a mechanism for easier public access to compiled information that is otherwise available to the public only through arduous research in criminal court files." [*Ayres, supra* at 15.]

This Court also quoted the following language from *Lanni v Engler*, 994 F Supp 849, 854 (ED Mich, 1998):

"Dissemination of information about a person's criminal involvement has always held the potential for negative repercussions for those involved. However, public notification in and of itself has never been regarded as punishment when done in furtherance of a legitimate government interest. . . . The registration and notification requirements can be more closely analogized to quarantine notices when public health is endangered by individuals with infectious diseases. . . . Whenever notification is directed to a risk posed by individuals in the community, those individuals can expect to experience some embarrassment and isolation. Nonetheless, it is generally recognized that the state is well within its rights to issue such warnings and the negative effects are not regarded as punishment." [*Ayres, supra* at 18.]

But this Court observed in *Ayres* that

the portion of the act that was the primary focus of constitutional scrutiny in *Kelley* and *Lanni*—the public notification provision—is obviously not at issue in the present case because respondent, a juvenile offender, is expressly exempted from this section of the act. As previously noted, registration information pertaining to juveniles not charged as adults is confidential and is to be used only by law enforcement personnel. MCL 28.728(2); MSA 4.475(8)(2), MCL 28.730(2), (3); MSA 4.475(10)(2), (3). Consequently, respondent cannot complain that the "sting of notification," *Lanni, supra* at 854, subjects him to undue public ostracism that confounds the purpose of the Juvenile Code. [*People v Poindexter*, 138 Mich App 322; 361 NW2d 346 (1984)].

Indeed, in our view, the fact that public access to registration data regarding juveniles is foreclosed only serves to underscore the federal courts' ultimate conclusion that the registration requirement of the act is not, in the constitutional sense, a form of "punishment." Reiterating the *Lanni* court's observation, *supra* at 853, "A law

designed to punish a sex offender would not contain these strict limitations on public dissemination." The Legislature's restrictive approach in applying the act to juvenile offenders, carefully circumscribing access to such registration data and exempting juvenile offenders from the public notification requirements of the act, evinces a broad remedial, not punitive, purpose. [*Id.* at 18-19.]

This Court arrived at the following conclusion:

In light of the existence of strict statutory safeguards that protect the confidentiality of registration data concerning juvenile sex offenders, we conclude that the registration requirement imposed by the act, as it pertains to juveniles, neither "punishes" respondent nor offends a basic premise of the juvenile justice system—that a reformed adult should not have to carry the burden of a continuing stigma for youthful offenses. The confidential collection and maintenance of juvenile offender registration data by law enforcement authorities serves an important remedial function and is not so punitive in form and effect as to render it unconstitutional "punishment" under Const 1963, art 1, § 16. [*Id.* at 21.]

*Ayres* was decided under SORA as first enacted, when public access to registration data was foreclosed. The essential underpinning of the conclusion in *Ayres* that the registration requirement imposed by SORA does not punish was the fact that strict statutory guidelines protected the confidentiality of registration data concerning juvenile sex offenders. This premise is no longer valid, however, because the creation of the PSOR in 1999 eliminated the confidential nature of the sex offender registry. Indeed, in *People v Wentworth*, 251 Mich App 560, 568-569; 651 NW2d 773 (2002), this Court, while not directly presented with the issue, questioned the continuing validity of *Ayres*:

In *Ayres, supra*, we held that the juvenile registration requirements of the SORA did not constitute cruel or

unusual punishment in part because juveniles were exempt from the public notifications requirements of the act. *Ayres, supra* at 20-21. We also concluded "[i]n light of the existence of strict statutory safeguards that protect the confidentiality of registration data concerning juvenile sex offenders" that the act did not offend the premise of our juvenile justice system that "a reformed adult should not have to carry the burden of a continuing stigma for youthful offenses." *Id.* at 21. However, the recent amendment of the statute removing those confidentiality safeguards raises questions about the continuing validity of our holding in *Ayres*. . . . [W]e invite the Legislature to reconsider whether the implied purpose of the act, public safety, is served by requiring an otherwise law-abiding adult to forever be branded as a sex offender because of a juvenile transgression.

Defendant argues that publicly labeling him as a convicted sex offender and requiring him to register pursuant to SORA, where he was assigned to youthful trainee status as a result of conduct that occurred during a Romeo and Juliet relationship with his girl-friend before October 1, 2004, constitutes punishment that is cruel or unusual.

This Court first must determine whether the registration requirement constitutes punishment in accordance with the facts of this case. " '[P]unishment, generally, is the deliberate imposition, by some agency of the state, of some measure intended to chastise, deter or discipline an offender.' " *Ayres, supra* at 14, quoting *Kelley, supra* at 1108. Utilizing the factors set forth in *Ayres*, " 'determining whether government action is punishment requires consideration of the totality of circumstances, and particularly (1) legislative intent, (2) design of the legislation, (3) historical treatment of analogous measures, and (4) effects of the legislation.' " *Id.* at 14-15, quoting *Kelley, supra* at 1108. See also *People v Golba*, 273 Mich App 603, 618; 729 NW2d 916 (2007).

With respect to legislative intent, MCL 28.721a indicates the Legislature's intent in enacting SORA:

> The legislature declares that the sex offenders registration act was enacted pursuant to the legislature's exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.

The Legislature's intent as set forth in express terms was not to chastise, deter, or discipline an offender, but rather to "assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders." MCL 28.721a. However, the Legislature's intention was frustrated in situations such as this, prompting in part the October 1, 2004, amendment of SORA. The 2004 amendment was motivated, in part, by concerns that "the reporting requirements are needlessly capturing individuals who do not pose a danger to the public, and who do not pose a danger of reoffending." House Legislative Analysis, HB 4920, 5195, and 5240, November 12, 2003, at 1.

The concern also existed that

> [s]uccessful completion of sentence-like conditions [under HYTA] results in dismissal of the charges and the person is deemed as having no conviction. However, under the Sex Offenders Registry Act, trainee status is defined as a

"conviction," and trainees are required to register like other sex offenders and remain on the public list for 25 years. Many feel that the requirement to be registered as a sex offender works against the philosophy of HYTA, which is to give a break to first-time offenders who are likely to be successfully rehabilitated. In the case of many convictions involving youthful offenders, offenses often involve consensual sex between young teen lovers. Since these youths hardly fit the definition of "sexual predator", and since successful completion of trainee status results in no conviction, advocates for youthful offenders have long desired the laws to be amended to exclude non-predatory youths convicted of sex crimes to be exempted from mandatory registration with the sex offenders registry. [*Id.* at 2.]

It is incongruous to find that a teen who engages in consensual sex and is assigned to youthful trainee status after October 1, 2004, is not considered dangerous enough to require registration, but that a teen who engaged in consensual sex and was assigned to youthful trainee status before October 1, 2004, is required to register. The implied purpose of SORA, public safety, is not served by requiring an otherwise law-abiding adult to forever be branded as a sex offender because of a juvenile transgression involving consensual sex during a Romeo and Juliet relationship.

With respect to the design of the legislation, the courts in *Kelley, supra* at 1109, and *Lanni, supra* at 853, concluded that the notification scheme in SORA was purely regulatory and remedial. The courts indicated that the statute did not impose a requirement on the registered offender, or inflict suffering, disability, or restraint. *Kelley, supra* at 1109; *Lanni, supra* at 853. However, the Michigan Supreme Court has recognized that there is a social stigma attached to convictions themselves. *People v Smith*, 423 Mich 427, 445 n 2; 378 NW2d 384 (1985). And the Court in *Mollett v City of Taylor*, 197 Mich App 328, 343; 494 NW2d 832 (1992), has referred

to a stigma as a disability, and it further indicated that a stigma or disability may deny an individual freedom to take advantage of some employment opportunities, which is precisely what defendant asserted happened to him in this case. Moreover, HYTA provides that an individual assigned to youthful trainee status "shall not suffer a civil disability or loss of right or privilege," MCL 762.14(2), *except* to the extent that the individual is required to register pursuant to SORA. MCL 762.14(3). Consequently, the language of HYTA implies that the requirement for a youthful trainee to register as a sex offender results in a disability as well as a loss of a right or privilege.

In this case, defendant actually suffered a disability and losses of rights or privileges. Under HYTA, "all proceedings regarding the disposition of the criminal charge and the individual's assignment as youthful trainee shall be closed to public inspection . . . ." MCL 762.14(4). Thus, unlike in *Kelley* and *Lanni*, where the courts indicated that the registration requirement did "nothing more than create a method for easier public access to compiled information that is otherwise available to the public through tedious research in criminal court files," in this case, the registration requirement created public access to compiled information that was otherwise closed to public inspection. *Lanni, supra* at 853; *Kelley, supra* at 1109. The SORA requirement that youthful trainees register as sex offenders was effective before SORA added its public notification procedures. Because MCL 762.14 is designed to prevent youthful trainees from suffering a disability or losses of privileges and rights except with respect to requiring registration, and because there was no public dissemination of the sex offender registry at the time, it seems clear the Legislature did not intend to punish youthful trainees by requiring them to register.

The dissemination of nonpublic information through SORA, however, had the opposite effect. The later SORA amendment removing those assigned to trainee status after October 1, 2004, appeared to rectify that issue.

The amendment, however, did not assist defendant's case. That defendant is suffering a disability and a loss of privilege is further confirmed by the fact that there are not strict limitations on public dissemination as there were in *Lanni*. The *Lanni* court noted that the registry limited searches so that a person living in a particular zip code can only search that zip code on the registry. *Lanni, supra* at 853. Consequently, the court in *Lanni* concluded that a law designed to punish a sex offender would not contain such strict limitations on dissemination. *Id.* Searches on the sex offender registry are no longer limited, however, to the searcher's zip code, but rather the registry provides a searcher with information about every person registered as a sex offender living in every zip code in the state.

The historical treatment of analogous measures is next considered under the *Ayres* test for determining whether governmental action constitutes punishment. However, no analogous measure exists, nor is there an historical antecedent that relates to requiring a defendant to register as a sex offender when the defendant was a teenager engaged in consensual sex and the defendant was assigned to youthful trainee status after October 1, 1995, but before October 1, 2004.

Finally, under the *Ayres* test, the effects of the legislation are considered. A user of the Michigan PSOR is provided with information stating that the intent of PSOR is "to better assist the public in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders" and that PSOR

is "intended to provide the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger." See PSOR <http://www.mipsor.state.mi.us> (accessed May 13, 2009). While the government has always had the authority to warn the public about dangerous persons and such warnings have never been understood as imposing punishment, *Kelley, supra* at 1111, in this case, the warning is not about the presence of an individual who is dangerous. Nevertheless, by including defendant's name on the sex offender registry, the government is effectively warning the public that defendant is dangerous, thus publicly labeling defendant as dangerous. Such warning or "branding" in the context of this case clearly constitutes punishment.

Further, the basic premise of HYTA is "to give a break to first-time offenders who are likely to be successfully rehabilitated" by having the offender's act not result in a conviction of a crime and by requiring that the offender's record not be available for public inspection. House Legislative Analysis, HB 4920, 5195, and 5240, November 12, 2003, at 2. However, the PSOR provides a "Conviction Date" of July 13, 2004, for defendant. See PSOR <http://www.mipsor.state.mi.us> (accessed May 13, 2009). Consequently, requiring defendant to register for 10 years forces him to retain the status of being "convicted" of an offense, thus frustrating the basic premise of HYTA.

Defendant convincingly asserts that the effects on him have been devastating. Defendant argues that he has been unable to find work as a result of being listed on the sex offender registry. He asserts that when he applies for work, he correctly states that he does not have a criminal record. However, because information about him is publicly available through the sex offender

registry, which can be accessed through the Internet, employers still discover the information. Defendant asserts that he applied unsuccessfully for approximately 75 jobs at fast-food establishments, factories, foundries, retail establishments, and the local mall. He was unable to find work through temporary agencies or with the assistance of job counselors. He was able to get hired at Burger King and Meijer, but in both cases was let go after the results of the record check were returned, which indicated that he was a registered sex offender. Defendant contends that while he can honestly tell employers that he does not have a criminal record, this is of little use when information about him is publicly available on the Internet. Thus, being listed on the registry has resulted in devastating financial and emotional consequences for him. He further asserts that because of his inability to work, he must rely on food stamps. He was also diagnosed with depression and believes that this was the direct result of the emotional and financial consequences of having to register as a sex offender. On the basis of the foregoing, defendant asserts that the financial and emotional consequences of requiring him to register have been devastating and thus requiring him to register as a sex offender, under the circumstances of this case, should be deemed punishment.

Given the totality of the circumstances as set forth above, we conclude that the registration requirement under SORA, as applied to defendant, constitutes punishment.

### B. DO THE REGISTRATION AND NOTIFICATION REQUIREMENTS OF SORA IMPOSE CRUEL OR UNUSUAL PUNISHMENT ON DEFENDANT?

Determining whether a punishment is cruel or unusual requires consideration of the gravity of the of-

fense, the harshness of the penalty, a comparison of the penalty to penalties for other crimes in this state, a comparison of the penalty to penalties imposed for the same offense in other states, and the goal of rehabilitation. *People v Launsburry*, 217 Mich App 358, 363; 551 NW2d 460 (1996).

Here, the circumstances of the offense are not very grave. Defendant was 18 years old and in a consensual sexual relationship with another teen who was almost 15 years old. The other teen's parents knew of the relationship and condoned it. This other teen is the same person defendant married five years later. The gravity of the offense does not change regardless of the date on which the assignment to youthful trainee status occurred.

The penalty in this case, however, has been harsh. Defendant is being required to register as a sex offender for 10 years. He receives the social stigma of being labeled as a sex offender and the social stigma of being "convicted" of a crime even though he successfully completed his status as a youthful trainee and the court dismissed the proceedings. As a result of registering as a sex offender, defendant has been unable to find employment and, in fact, lost two jobs after it was discovered that his name is on the sex offender registry. He is depressed and, although he finally married NT, the opportunity to marry and pursue happiness was delayed because of his inability to find employment as a result of being labeled a convicted sex offender. Given the circumstances of this case, the offense that defendant committed was not very grave, but the penalty has been very harsh.

With regard to a comparison of the penalty to penalties for other crimes in this state, defendant would not have had to register as a sex offender had he been

assigned to youthful trainee status approximately one month later than he was. Defendant is required to register as a sex offender along with rapists and pedophiles. The PSOR does not provide a description of an offender's offense. Thus, individuals viewing the PSOR are unable to determine whether a person who is registered is a rapist, a pedophile, or just a person who engaged in consensual sexual activity with a teen.

With regard to a comparison of the penalty to penalties imposed for the same offense in other states, USA Today reported on July 24, 2007:

> More states are bucking the national crackdown on sex offenders by paring back punishment for teens who have consensual sex with underage partners.
>
> Governors in seven states have signed bills in the past two months that mean no prosecution for some teens or no requirement to register as a sex offender.
>
> States vary widely in how they prosecute consensual teen sex, which prosecutors refer to as "Romeo and Juliet" cases, but some remain tough on teens who are several years older than their partners. [USA Today, *States ease laws that punish teens for sex with minors* <http://www.usatoday.com/news/nation/2007-07-24-teen-sex-offenders_N.htm> (accessed May 13, 2009).]

In *Wallace v State*, 905 NE2d 371, 384 (Ind, 2009), the Indiana Supreme Court recently concluded that Indiana's sex registration law, as applied to the defendant in that case, was punitive. The court noted that "the Act makes information on all sex offenders available to the general public without restriction and without regard to whether the individual poses any particular future risk." *Id.* Consequently, "if the registration and disclosure are not tied to a finding that the safety of the public is threatened, there is an implication that the Act is excessive." *Id.* at 383. The court held

that "the non-punitive purpose of the Act, although of unquestioned importance, does not serve to render as non-punitive a statute that is so broad and sweeping." *Id.* at 384.

Because defendant's registration is not tied to a finding that the safety of the public is threatened, the registration requirement, as applied to defendant, is excessive. *Id.* at 383. Hence, the registration requirement, as applied to defendant, is punitive. *Id.* at 384. Moreover, even the Michigan Legislature noted that "[s]ome states reserve sex offender registration for those individuals who truly represent a danger to the public and have a high risk of reoffending." House Legislative Analysis, HB 4920, 5195, and 5240, November 12, 2003, at 6. Other states are recognizing the need to distinguish between people who truly represent a danger to the public and those who do not. The penalties imposed for the same Romeo and Juliet offense in some other states are less severe.

Also, it is abundantly clear that there is no goal of rehabilitation in this case. Defendant never posed a danger to the public or a danger of reoffending. Defendant is not a sexual predator, nor did the trial court deem him to be. Further, even if defendant needed rehabilitation, SORA's labeling him as a convicted sex offender works at an opposite purpose, preventing defendant from securing employment and otherwise moving forward with his life plans.

Consequently, after considering the gravity of the offense, the harshness of the penalty, a comparison of the penalty to penalties imposed for the same offense in other states, and the goal of rehabilitation, we conclude that requiring defendant to register as a sex offender for 10 years is cruel or unusual punishment. We vacate

the trial court's April 1, 2008, order and remand the case to the trial court to enter an order consistent with this decision.

Vacated and remanded. Jurisdiction is not retained.