# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SAMIR HADOUS,

        Defendant-Appellant.

UNPUBLISHED
October 28, 2014

No.   314060
Wayne Circuit Court
LC No.   04-000496-FC

Before:  BORRELLO, P.J., and WHITBECK and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by leave granted a June 29, 2012, trial court order denying his motion for removal from the sex offender registry under the Sex Offender Registration Act (SORA), MCL 28.721 *et seq*.  For the reasons set forth in this opinion, we affirm.

On January 23, 2004, defendant pleaded guilty to one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (sexual contact accomplished through force or coercion).  Defendant's guilty plea arose from an April 20, 2003, incident involving TS.  At the time of the offense, defendant was 19 years old and TS was 15 years old.

The record indicates that TS alleged that she was at a party with defendant and Jerry Babcock Jr., when she took a "hit" of the drug ecstasy and began feeling ill.  Defendant and Babcock offered to give TS a ride home and TS agreed.  TS testified at the preliminary examination that defendant and Babcock instead drove her to Babcock's sister's house.  At the house, TS went into a bedroom and lied down because she was still not feeling well.  Defendant and Babcock left, but then returned and came inside the bedroom.  One of them asked if she was "all right" and defendant tried to unbutton her shirt.  When asked why, defendant stopped, TS replied that she could not remember, but she "kind of like brushed him off."  One of them then unbuttoned her pants and pulled them off and removed her shoes.  At the preliminary examination, TS testified that Babcock left the room, and defendant crawled on top of her and "starts to have sex with me."  When asked what she did at that point, TS indicated that she said "stop" and "started to like push up a little bit" but she could not get him off her.  When defendant was "done," he left the bedroom and Babcock entered the room and crawled on top of her and did "the same thing" as defendant.  TS claimed that she was shocked and did not know what to do.  When Babcock was finished, defendant entered the room and attempted to penetrate TS

-1-

again but he was not able to do so, and then Babcock returned and penetrated her. TS claimed that when they were finished, she asked for a ride home.

TS testified that, during the assaults, she did not feel as if she could get up and walk out because of "the way they were acting toward me." When asked how defendant and Babcock were acting, TS explained, "I don't know. Like, they didn't use force but with their words and their actions, and the way they were, it was kind of – it was forceful, you know."

On January 23, 2004, defendant and Babcock pleaded guilty to one count of CSC-IV. In entering the plea, defendant stated that he inappropriately touched the victim on her breast without permission to do so.

On March 1, 2004, the trial court sentenced defendant under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, to two years' probation, to serve the first 30 days in jail, and to register as a sex offender and to attend sex counseling. Defendant eventually completed probation and was discharged from his HYTA assignment on January 18, 2006.

On October 9, 2008, defendant moved to modify his registration period from 25 years to 10 years. Defendant's case was reassigned to a new trial judge who denied defendant's motion.

On August 29, 2011, defendant petitioned the court to discontinue registration under the SORA's "consent exception," which was added as part of a 2011 legislative amendment. The trial court denied the motion, concluding that the act was nonconsensual.

Defendant moved for reconsideration, arguing in part that the original sentencing judge should have ruled on the motion since the judge was still available to do so. Defendant also argued that simply because he pled guilty to an offense involving an incapacitated victim, this did not render the act nonconsensual.[1] In denying the motion, the trial court pointed out that when defendant pleaded guilty he stated he did not have permission to touch the victim's breast.

On May 23, 2012, defendant again moved for removal from the sex offender registry, arguing that requiring him to register under the SORA constituted cruel or unusual punishment. Defendant relied on *People v Dipiazza*, 286 Mich App 137; 778 NW2d 264 (2009), and attached a psychological evaluation report by a licensed psychologist who opined that defendant is a low risk to re-offend and is not a danger to the community.

On June 29, 2012, the trial court denied defendant's motion. Six months later, defendant filed a delayed application for leave to appeal in this Court and this Court granted defendant's application.[2]

---

[1] The parties apparently did not have the transcript of the guilty plea at the time because defendant misstated that he pleaded guilty to an offense involving an incapacitated victim.

[2] *People v Hadous*, unpublished order of the Court of Appeals, entered July 10, 2013 (Docket No. 314060).

Defendant argues that the trial court erred in denying his motion for removal from the sex offender registry. Defendant contends that requiring him to register under the SORA constitutes cruel or unusual punishment when he does not have a conviction of a sex offense.

"We review constitutional issues de novo." *People v Darden*, 230 Mich App 597, 600; 585 NW2d 27 (1998). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *In re Ayres*, 239 Mich App 8, 10; 608 NW2d 132 (1999). "The party challenging a statute has the burden of proving its invalidity." *Id*. To the extent we must interpret the applicable statutory provisions, issues involving statutory interpretation are questions of law that we review de novo. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

"The Michigan Constitution prohibits cruel *or* unusual punishment, Const. 1963, art. 1, § 16, whereas the United States Constitution prohibits cruel *and* unusual punishment, U.S. Const. Am. VIII." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). Necessarily, a law must impose punishment for it to violate the proscription against cruel or unusual punishment.

Defendant was adjudicated under the HYTA. "An assignment to youthful trainee status does not constitute a conviction of a crime unless the court revokes the defendant's status as a youthful trainee." *Dipiazza*, 286 Mich App at 141-142, citing MCL 762.12. In the event the defendant successfully completes his or her HYTA assignment, the court "shall discharge the individual and dismiss the proceedings," MCL 762.14(1), and, "all proceedings regarding the disposition of the criminal charge and the individual's assignment as a youthful trainee shall be closed to public inspection. . . ." MCL 762.14(4). However, an individual assigned HYTA status "before October 1, 2004, for a listed offense enumerated in section 2 [MCL 28.722] [of the SORA], is required to comply with the requirements of [the SORA]." MCL 762.14(3).

In this case, defendant pled guilty to CSC-IV, MCL 750.520e, and, because the victim was 13 years of age or older but less than 18 years of age, the offense is a listed Tier-II offense under the SORA. See MCL 28.722(u)(*ix*). Although defendant was assigned and completed youthful trainee status under the HYTA, because defendant's adjudication occurred before October 1, 2004, he is considered to have been "convicted" of a listed offense for purposes of the SORA and must register as a sex offender. MCL 762.14(3). As a Tier-II offender, defendant is required to comply with the SORA for 25 years. MCL 28.725(11).

Defendant argues that the SORA imposes punishment because he does not have a conviction for a sex offense on his record where he was adjudicated under the HYTA. In *People v Temelkoski*, ___Mich App___; ___NW2d___ (2014) (Docket No. 313670), this Court recently addressed and rejected an identical argument brought by a HYTA defendant. Specifically, in *Temelkoski*, this Court held that the SORA, as applied to the HYTA defendant, did not impose punishment for purposes of the constitution. See Slip op. at 14-16. *Temelkoski* is directly on point and it is therefore controlling in this case. See MCR 7.215(C)(2) ("[a] published opinion of the Court of Appeals has precedential effect under the rule of stare decisis"); *WA Foote Mem Hosp v City of Jackson*, 262 Mich App 333, 341; 686 NW2d 9 (2004) ("The rule of stare decisis generally requires courts to reach the same result when presented with the same or substantially similar issues in another case with different parties.") In short, the SORA does not impose

punishment as applied to defendant where the SORA is a remedial measure designed to protect the general health and safety of the public. Accordingly, the trial court did not err in denying defendant's motion for removal from the sex offender registry.

Defendant cites *Dipiazza*, 286 Mich App 137, in support of his argument that the SORA imposes punishment as applied to a HYTA defendant. *Dipiazza* does not apply in this case. Initially we note that the facts and circumstances of this case are vastly different than the relationship described in *Dipiazza*. In this case, although defendant only admitted to touching the victim's breast without permission, the victim's preliminary examination testimony showed that defendant and the co-defendant took turns forcibly penetrating her at a time when she had experimented with a drug. This was not a consensual relationship condoned by the victim's parents. *Dipiazza* is wholly inapplicable. Moreover, in *Temelkoski*, ___Mich App at___, this Court limited the scope of *Dipiazza*, concluding that a 2011 legislative amendment to the SORA rendered *Dipiazza's* constitutional analysis outdated. See Slip op. at 9. Therefore, *Dipiazza* has no bearing on the outcome of this case.

Defendant also argues that his motion for removal from the SORA should have been heard by the original sentencing judge. However, because the trial court properly denied defendant's motion, remand for reconsideration before either judge is not warranted.

Affirmed. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ William C. Whitbeck
/s/ Kirsten Frank Kelly

-4-