*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KENNETH AARON MALONE,

Defendant-Appellant.

FOR PUBLICATION
September 21, 2023
9:00 a.m.

No. 331903
Macomb Circuit Court
LC No. 2015-001129-FH

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order denying his motion for removal from the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*., rejecting defendant's argument that lifetime registration under SORA constituted cruel or unusual punishment under the state Constitution.[2] We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY[3]

Defendant was born on April 4, 1998. He was characterized as cognitively and emotionally impaired and received special education services throughout his school years. When defendant was in the tenth grade he brought a knife onto high school property and was suspended.[4] As a juvenile, in 2014, he was arrested for domestic violence, and his adjudication resulted in a term of

---

[1] *People v Malone*, unpublished order of the Court of Appeals, entered October 19, 2022 (Docket No. 331903).

[2] Although defendant raised additional arguments below, this is the only argument he pursued on appeal.

[3] The factual and procedural history was compiled from the hearing transcripts and the presentence investigation report (PSIR).

[4] Defendant was to attend an alternative school when this offense occurred.

probation. Later, in 2015, he was arrested for domestic violence[5] and disturbing the peace, pleaded nolo contendere to disturbing the peace, and this adjudication also resulted in a term of probation.

Defendant's mother proffered that defendant was diagnosed with schizophrenia. Additionally, defendant reported that he had a history of auditory hallucinations. Specifically, he claimed that auditory hallucinations commanded him to either commit suicide or commit acts of criminal sexual conduct (CSC). On March 3, 2015, defendant's mother was caring for the victim, 14-month-old KP,[6] and a three-year-old. Defendant took the victim into the bedroom for a nap. When defendant did not return, his mother went to the bedroom to check on them. Defendant was lying on the bed with the victim with a blanket covering them. When his mother asked what defendant was doing, he admitted that he was masturbating. She removed the blanket and found that defendant had his pants and underwear pulled down. Additionally, the victim's pajamas and diaper were pulled down, and defendant's penis was touching the victim's buttocks. Defendant's mother called the police.

Initially, defendant explained to the police that he exposed his penis and placed it inside the victim's anus. However, defendant later denied penetrating the victim's anus and claimed to have only placed his penis between the victim's buttocks.[7] Also, during this police interview, defendant acknowledged that he had sexually penetrated his cousin but the incident was not reported. Although defendant proffered that auditory hallucinations and his prescribed medications caused his behavior, a mental health evaluation performed in March 2015, diagnosed defendant with generalized anxiety disorder and recurrent major depression but not psychotic symptoms.[8] Indeed, defendant attributed his conduct to auditory hallucinations, but then admitted that his conduct was the result of his sexual impulses. Defendant was also characterized as oppositional and defiant, and he was physically or verbally aggressive toward adults or peers regardless of whether provoked or not.

Defendant was charged as an adult with first-degree CSC, MCL 750.520b(1)(a). After consulting with two court-appointed attorneys as well as a guardian ad litem, defendant pleaded

---

[5] The acts of domestic violence were purportedly committed upon defendant's mother and his sister.

[6] Although defendant asserted that the victim suffered no trauma from the assault, the victim's mother reported that the victim woke up during the assault, was "clingier" than usual after the assault, and would not sleep unless it was with her. The victim also pulled his hair out. And, for the next five years, the victim had to be tested for sexually transmitted diseases.

[7] Entry into the anal canal is not required to commit sexual penetration because the Legislature intended that "anal opening" broadly include the crease or void of the buttocks. See *People v Anderson*, 331 Mich App 552, 560-562; 953 NW2d 451 (2020).

[8] At sentencing, defendant's counsel stated that a psychologist, "Dr. Ryan," determined that defendant was bipolar and schizophrenic and suffered from attention deficit hyperactivity disorder (ADHD) and depression. Dr. Ryan also estimated that defendant was mentally in the age range of a 7 to 9-year-old. Dr. Ryan's report was not preserved in the lower court record for our review.

guilty to second-degree CSC, MCL 750.520c(1)(a).[9]  A psychological evaluation and reoffending assessment determined that defendant had a high risk of reoffending if he did not receive treatment. The trial court sentenced defendant as a Public Act 150 ward,[10] and remanded him to the juvenile justice center until placement in a treatment facility.  The trial court further ordered defendant to register under SORA for a Tier III offense.[11]

Under Public Act 150, defendant was placed at a specialized treatment facility.  This placement did not yield positive results.  Defendant engaged in grooming behavior with peers. Specifically, he sought out younger individuals or individuals with emotional issues in an attempt to take advantage of them.  Defendant did not attempt this behavior with strong peers in his group. Although defendant was on task three of his workbook, he was forced to repeat the tasks because he lied numerous times.  At another review hearing, it was learned that defendant was acting out sexually, denied privileges, removed from his peers, and placed in detention.  After given a new supervisor and peer group, defendant improved in his behavior, and these small steps were deemed encouraging.  It was determined that defendant would remain in the juvenile program.

However, in February 2017, the trial court was advised that defendant should be resentenced as an adult.  At the facility, defendant had engaged in inappropriate behaviors, including grooming his peers and inappropriate sexual behaviors, made inappropriate comments to staff and peers, and failed to follow the rules.  It was concluded that defendant was ineligible for release because he had not incorporated the teachings of the program into daily life.  Despite defendant's lower cognitive ability, it was recommended that he remain in a secured environment

---

[9] During the plea hearing, defendant advised the trial court that he had received psychological counseling since he was eight years old.  Additionally, defendant stated that he received diagnoses of bipolar disorder, depression, attention deficit disorder, and ADHD.  Defendant's mother asserted that he engaged in assaultive behavior upon family members that reflected aggressive personality disorders and that his cognitive ability did not match his age.  Despite his limitations, defendant confirmed that he could read, write, and understand the English language, and his medications did not affect his ability to understand.  Defendant was apprised of the 15-year maximum period of imprisonment, the requirement that he register as a sex offender, the possibility of placement in a juvenile facility for an extended period, and the conceivability that he could be resentenced as an adult for failing to comply with the requirements of the juvenile justice system.

[10] The Youth Rehabilitation Services Act, MCL 803.301 *et seq*., provides that "[a] youth agency may receive and accept youths as public wards for purposes of care and rehabilitation[.]" MCL 803.303(1).  The Department of Health and Human Services assumes responsibility for the youth as a public ward.  See MCL 803.303(2).

[11] Generally, tier III offenders must report under SORA for life.  MCL 28.725(13).  A tier III offense is a "listed offense" under SORA.  MCL 28.722(i).  Registration under SORA is mandatory for individuals domiciled in Michigan who are convicted of listed offenses after October 1, 1995. MCL 28.723(1)(a).  As a tier III offense, defendant's conviction of CSC-II carried a mandatory requirement of SORA registration.  *Id*.

because he had a "high propensity" to reoffend. After an alternative program for defendant could not be located either in or out of state, defendant was resentenced as an adult to 36 to 180 months' imprisonment.[12]

In 2016, defendant moved for removal from the registration requirements of SORA, claiming that the statute was unconstitutional. The trial court denied defendant's motion. From this decision, defendant appeals by leave granted.[13]

## II. STANDARD OF REVIEW

Questions relating to statutory interpretation are reviewed de novo. *People v Isrow*, 339 Mich App 522, 526; 984 NW2d 528 (2021). When interpreting a statute, the court's overriding goal is to give effect to the Legislature's intent by examining the plainly expressed language. *People v Propp*, 508 Mich 374, 383; 976 NW2d 1 (2021).

Constitutional questions are generally reviewed de novo. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). A statute is presumed to be constitutional, and courts will construe a statute as constitutional unless its unconstitutionality is plainly apparent. *People v Lawhorn*, 320 Mich App 194, 198; 907 NW2d 832 (2017). The party challenging the statute's constitutionality has the burden of proving its invalidity. *People v GR*, 331 Mich App 58, 68; 951 NW2d 76 (2020).

## III. ANALYSIS

Defendant contends that lifetime SORA registration for juvenile offenders, even when convicted and sentenced as adults, constitutes, on its face, cruel or unusual punishment under the Michigan Constitution. We disagree.

"The Michigan Legislature enacted SORA in 1994 . . . 'to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders,' MCL 28.721a." *People v Betts*, 507 Mich 527, 533; 968 NW2d 497 (2021). Although the act initially was a confidential database accessible to law enforcement only, it evolved into a computerized database available to the public online. *Id.* at 533-534. The requirements placed on registrants also expanded to require disclosure of affiliation with an institution of higher learning, an updated photograph, employment status, vehicle information, and shortened registry requirements. *Id.* at 534-535. The *Betts* Court determined that the 2011 amendments to SORA contained aggregate punitive effects that negated

---

[12] Since defendant was sentenced, he was paroled and discharged.

[13] We initially denied defendant's delayed application for leave to appeal, *People v Malone*, unpublished order of the Court of Appeals, entered May 4, 2016 (Docket No. 331903), and his motion for reconsideration of that decision, *People v Malone*, unpublished order of the Court of Appeals, entered June 10, 2016 (Docket No. 331903). Our Supreme Court remanded the matter to this Court but directed that we hold the matter in abeyance pending further decisions by this Court. *People v Malone*, 509 Mich 852; 969 NW2d 62 (2022).

the state's intent to deem it merely a civil regulation. *Id*. at 562. Accordingly, it was concluded that retroactive application of the 2011 SORA violates constitutional ex post facto provisions. *Id*. Because severability and revival did not provide an adequate remedy, the Court held that "the 2011 SORA may not be retroactively applied to registrants whose criminal acts subjecting them to registration occurred before the enactment of the 2011 SORA amendments." *Id*. at 573-574.[14]

In light of the determination that the 2011 SORA amendments constitute punishment, defendant submits that the lifetime registration requirements violate Michigan Constitution's prohibition on cruel or unusual punishment, Const 1963, art 1, § 16. "When a party asserts a facial challenge to the constitutionality of a statute, the party must demonstrate that no circumstances exist under which the statute would be valid." *People v Dillon*, 296 Mich App 506, 511; 822 NW2d 611 (2012) (citation omitted).

> To determine whether a punishment is cruel or unusual, courts assess whether it is "unjustifiably disproportionate" to the offense committed by considering four factors: (1) the harshness of the penalty compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed for other offenses in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the goal of rehabilitation. [*People v Lymon*, 342 Mich App 46, 82; 993 NW2d 24 (2022), lv gtd 511 Mich 860; 983 NW2d 82 (2023), citing *People v Bullock*, 440 Mich 15, 33-34; 485 NW2d 866 (1992).]

Defendant first submits that the severity of the offense, rubbing his penis against the 14-month-old victim's buttocks, was not the "most heinous" act because the victim will have no memory of the incident. Defendant further contends that he will be given a social stigma and branded as a sex offender, subject to a plethora of registration requirements, and unable to petition for removal, without consideration of the science pertaining to the juvenile brain, see *People v Parks*, 510 Mich 225, 249-250; 987 NW2d 161 (2022).

Contrary to defendant's assertion, defendant initially reported to the police that he anally penetrated the victim but later claimed that he merely rubbed his penis externally against the victim's buttocks. Regardless of his contention, defendant nonetheless penetrated the victim. See *People v Anderson*, 331 Mich App 552, 560-562; 953 NW2d 451 (2020). Furthermore, the victim's mother reported that the victim suffered adverse consequences as a result of the CSC. Specifically, she indicated that the victim woke up during defendant's assault, became "clingier" after the assault, had to sleep with and touch the mother, and endured years of testing for sexually transmitted diseases. Although defendant contends that the SORA lifetime registration penalty

---

[14] In *People v Lymon*, 342 Mich App 46, 78; 993 NW2d 24 (2022), lv gtd 511 Mich 860; 983 NW2d 82 (2023), this Court concluded that the 2021 amendments to SORA, 2020 PA 295, promoted the traditional aim of punishment. The *Lymon* Court did not address whether mandatory lifetime registration under SORA constituted cruel or unusual punishment, but addressed whether the registration requirement was cruel or unusual punishment when imposed for a crime that lacked a sexual component and was not sexual in nature. *Id*. at 82-83.

does not account for the commission of the offense at age 16 and his brain development, defendant was sentenced at the age of 17 to a juvenile facility in accord with Public Act 150. Thereafter, he did not comply with the rules of his juvenile placement, began to groom peers that were younger or suffered from emotional issues, engaged in inappropriate sexual behaviors, and failed to obey staff. It was determined that defendant could not be released because he failed to incorporate his training into daily life and that he presented a high risk of reoffending. Indeed, in the PSIR, it was recorded that defendant's sexual impulses were responsible for his behavior, not his mental health diagnoses. Therefore, the trial court determined that it was required to resentence defendant as an adult.

And, contrary to defendant's claim, the gravity of the offense was the most heinous. Defendant removed the victim from the care of an adult and took him into another room. There, defendant decided to engage in masturbation and employed the victim in his sexual act by removing the victim's pajamas and diaper to penetrate the victim. The victim, only 14-months old,[15] was limited in the ability to ascertain what was transpiring as well as to articulate the need for help.

Further, defendant had been in the treatment and care of mental health professionals for a number of years. Yet, it did not appear that he benefited from medication and treatment. He committed this offense at the age of 16, was sentenced to a juvenile facility at the age of 17, and resentenced as an adult at the age of 19. At the time of his adult sentencing, defendant was deemed a high risk to reoffend. The contention that the severity of the offense does not equate with the harshness of the penalty is not supported by the record evidence. In light of the gravity of defendant's offense, mandatory lifetime registration is a proportionate punishment.

Defendant also contends that the penalty imposed, mandatory lifetime registration, is exceedingly rare and more severe because the punishment will last longer on a youthful offender as opposed to an adult. Lifetime registration, however, is not the only mandatory penalty imposed in Michigan. Mandatory lifetime imprisonment is the penalty imposed for first-degree murder, MCL 750.316(2). Two years' imprisonment is the mandatory punishment for the possession of a firearm during the commission of a felony, MCL 750.227b(1). A second conviction results in the mandatory punishment of five years' imprisonment, and a third conviction is subject to a mandatory 10-year period. *Id.* Additionally, certain CSC-I convictions may impose a mandatory 25-year minimum sentence, MCL 750.520b(2)(b), or a mandatory life sentence, MCL 750.520b(2)(c). A sentence mandated by the Legislature is presumptively proportional and presumptively valid. *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). A proportionate sentence is not a cruel or unusual punishment. See *People v Bowling*, 299 Mich App

---

[15] In *People v Dipiazza*, 286 Mich App 137, 153-154; 778 NW2d 264 (2009), the defendant was 18 years old and in a consensual sexual relationship with a 15-year-old. The 15-year-old's parents were aware of the relationship and condoned it. Five years later, the defendant married the 15-year-old. This Court concluded that the circumstances of the case were not very grave, but the penalty of 10 years' registration on SORA was "very harsh" in comparison. *Id.* at 154. In the present case, the CSC committed upon a 14-month-old was grave in comparison to the penalty.

552, 558; 830 NW2d 800 (2013). The Legislature has determined offenses for which mandatory punishments are warranted, including murder, weapon, and sex offenses, without regard to the age of the offender.[16] These mandates are presumptively proportional and valid. Accordingly, this factor does not weigh in favor of finding cruel or unusual punishment when examining SORA requirements imposed on a youthful offender.

Next, defendant notes that an examination of other jurisdictions reveals that only 18 states have substantially implemented the federal Sex Offenders Registration and Notification Act, 42 USC 16901 *et seq.*,[17] there is no uniform view that these registries operate to improve public safety, and research indicates that the dangerousness of sex offenders had been "overblown." He further submits that individual considerations of the juvenile are more desirable and appropriate. However, defendant fails to recognize that an individualized approach was taken pertaining to his own circumstances. Specifically, defendant was charged with CSC-I and was permitted to plead to CSC-II. Applying Public Act 150, defendant was remanded to a juvenile facility for treatment.

When defendant did not comply with the rules of the facility, did not obey the staff, and engaged in inappropriate sexual behaviors, he was warned of the consequences of his noncompliance. In an attempt to obtain compliance and ensure that defendant incorporated the lessons of the program into his daily life, defendant was given a new supervisor and new peer group. Again, these efforts failed. Defendant could not simply be released from the program due to his failure to benefit, and he was deemed a high-risk reoffender. Thus, regardless of the number of states that have adopted sex offender registries, whether the registries benefit public safety, and the recidivism of sex offenders generally, defendant committed CSC-II with a 14-month-old victim. His penalty involved treatment in a juvenile facility. Despite being in the care and supervision of staff, defendant deliberately attempted to groom vulnerable peers and engaged in inappropriate sexual behaviors. Defendant was deemed a high risk for reoffending in light of his continued inappropriate conduct, and he continued to engage in inappropriate acts *in front of supervising adults*. Defendant received an individual assessment of risk, and it was determined

---

[16] Although the Legislature has provided for lifetime punishments, its action has been constrained by judicial determinations regarding the constitutionality of such punishments in some contexts. See *Miller v Alabama*, 567 US 460, 479-480; 132 S Ct 2455; 183 L Ed 2d 407 (2012); *People v Parks*, 510 Mich 225, 268; 987 NW2d161 (2022) (wherein our Supreme Court determined the automatic sentence of life without parole was unconstitutional for 18-year-olds as cruel or unusual punishment and requiring compliance with MCL 769.25 by the prosecutor seeking to impose such a penalty); *People v Stovall*, 510 Mich 301, 320-322; 987 NW2d 85 (2022) (holding that a parolable life sentence for a juvenile defendant convicted of second-degree murder violates this state's prohibition against cruel or unusual punishment).

[17] In a case involving an adult tier III defendant, this Court determined that "mandatory lifetime sex offender registration is not unique to Michigan," and that "[m]any states have a tiered system for sex offender registration, with lifetime registration reserved for the most heinous perpetrators of sexual assault." *In re Jarrell*, ___ Mich App ___, ___; ___ NW2d ___ (2022), lv pending; slip op at 11.

that an adult sentence and mandatory SORA registration was required when the diversionary juvenile program failed. Again, this factor does not weigh in favor of the youthful offender.

With regard to the fourth factor, defendant submits that mandatory lifetime SORA registration is contrary to the goal of rehabilitation. In the context of an adult tier III offender, this Court ruled that SORA's mandatory lifetime registration "will not assist [the offender's] rehabilitation." *People v Jarrell*, ___ Mich App ___, ___; ___ NW2d ___ (2022); slip op at 11. Regardless, this Court determined that "the other three factors strongly support that such punishment is neither cruel nor unusual. . . ." *Id*. The same is true in this case and defendant failed to meet his burden of demonstrating that the requirement of mandatory lifetime registration was invalid.

Lastly, defendant submits that remand is warranted for an evidentiary hearing to determine whether mandatory lifetime SORA registration is cruel or unusual punishment as applied to defendant. We disagree.

A statute is not deemed unconstitutional simply because a hypothetical may cast doubt upon it. *People v Malone*, 287 Mich App 648, 658-659; 792 NW2d 7 (2010) (citation omitted). Rather, the analysis must focus on whether the statute, as applied to the actions of the individual defendant, is constitutional. *Id*. at 659. Defendant questions whether he has the ability to comply with the many procedural requirements of SORA in light of his mental capacity and in the absence of assistance. This hypothetical is insufficient to raise an as-applied challenge or to warrant a remand to the trial court.

In summary, the trial court did not err in failing to order defendant's removal from the mandatory lifetime SORA registration requirements because the procedure did not constitute cruel or unusual punishment.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel