*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BUCK ARTHUR FRALY,

Defendant-Appellant.

UNPUBLISHED
June 22, 2023

No. 361312
Grand Traverse Circuit Court
LC No. 2020-013428-FC

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

Following his guilty plea to third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(d) (victim related to defendant by blood or affinity to the third degree), defendant appeals by leave granted his sentence of 10 to 15 years' imprisonment with lifetime registration under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.* In a Standard-4 brief, defendant challenges his conviction, alleging ineffective assistance of trial counsel. We affirm.

At defendant's preliminary examination, the victim testified that defendant routinely sexually abused him since he was 11 years old. After being bound over on three charges of first-degree CSC (CSC-I) involving a child under the age of 13 by a person who was 17 years old or older, MCL 750.520b(1)(a),[1] defendant pleaded guilty to a single act of incest involving the victim engaging in fellatio.

On appeal, defendant argues that the trial court erred by conducting the sentencing hearing with defendant participating remotely, in assessing certain offense variables (OVs) under the sentencing guidelines, and by denying defendant's request to modify certain information contained in the presentence investigation report (PSIR). Additionally, defendant argues that lifetime SORA registration constitutes cruel or unusual punishment.

---

[1] Those crimes were punishable by a minimum mandatory 25-year penalty, MCL 750.520b(2)(b).

## I.  RIGHT TO PHYSICALLY APPEAR

Defendant argues that the trial court erred by denying his motion for resentencing on the ground that he was not physically present at his sentencing, appearing only by video.  We disagree.

A criminal defendant has a right to be present at any "stage of trial where the defendant's substantial rights might be adversely affected," including when a sentence is imposed.  *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984).  MCR 6.006(A) provides trial courts with the discretion to conduct several proceedings with the defendant appearing by videoconferencing, including sentencing for a misdemeanor offense.  In *People v Heller*, 316 Mich App 314, 317-318; 891 NW2d 541 (2016), this Court held that sentencing for felony offenses could not properly be held via two-way interactive technology because of its exclusion from MCR 6.006(A), and that "virtual appearance is not a suitable substitute for physical presence" at a critical stage of trial at which a defendant has a constitutional right to be present.

In this case, the initial sentencing hearing and the adjourned sentencing hearing occurred during the global pandemic[2] and involved a defendant with health issues.  At the initial sentencing hearing, the trial court inquired of defendant and his counsel whether they had reviewed the PSIR.  Defense counsel represented that defendant and she had had the "opportunity to thoroughly review the report as well as the guidelines scoring."  Counsel added that there were "a couple of factual corrections" and "numerous guidelines issues."  Counsel had shared her objections to the guidelines scoring with the prosecutor and the Department of Corrections two days earlier, and the Department had replied.

Prior to addressing any challenges, the trial court stated, "Before we proceed, we're doing this all by Zoom, is that an acceptable way to proceed with this sentencing, [defense counsel]?"

---

[2] On April 7, 2020, in response to the COVID-19 pandemic, our Supreme Court entered Administrative Order No. 2020-6, 505 Mich xc (2020), placing the following provisions into effect:

> [T]he Court authorizes judicial officers to conduct proceedings remotely (whether physically present in the courtroom or elsewhere) using two-way interactive videoconferencing technology or other remote participation tools under the following conditions:
>
> • any such procedures must be consistent with a party's constitutional rights;
>
> • the procedure must enable confidential communication between a party and the party's counsel;
>
> * * *
>
> While this order is in effect, and consistent with its provisions, all judges in Michigan are required to make a good faith effort to conduct proceedings remotely whenever possible.  [AO 2020-6.]

This order was in effect through July 26, 2021.  *Id.*  Defendant's sentencing occurred on October 26, 2020.

Defense counsel responded, "It is, your Honor." After discussing defendant's objections to the PSIR and guidelines scoring, however, the trial court adjourned sentencing so that defendant could outline his objections and the prosecution could respond.

Over two weeks later, at the adjourned sentencing hearing, the court stated that the hearing was via Zoom and asked defendant's counsel, "is this an acceptable way to proceed?" Defense counsel again replied, "It is." The trial court then stated that it would begin the proceeding anew to ensure that that everyone was "on board." Defendant personally participated in the proceeding by discussing lifetime sex-offender registration with the trial court, providing allocution, and disputing the court's statements as it imposed his sentence.

After appellate counsel was appointed, defendant moved for resentencing, contending that counsel's waiver was insufficient and that a personal waiver was required. The court denied this motion.

A defendant may waive the right to be personally present at sentencing when he "specifically knows of the right to be present and intentionally abandons the protection of that right." *People v Palmerton*, 200 Mich App 302, 303; 503 NW2d 663 (1993). In this case, the trial court plainly acknowledged that the hearing was conducted without defendant's personal presence by way of interactive video technology for public health reasons and with the Supreme Court's administrative orders encouraging the use of such technology. Thus, the court relied on counsel's consent to proceed with sentencing via Zoom.

A waiver, or "the intentional relinquishment or abandonment of a known right," extinguishes any error. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000) (quotation marks and citations omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Moreover, "[a] defendant may not waive objection to an issue before the trial court and then raise it as an error on appeal." *Carter*, 462 Mich at 214 (quotation marks and citation omitted).

In this case, the trial court's question communicated that defendant was not compelled to appear remotely, and counsel's response, with defendant present, confirmed that a remote appearance was acceptable, perhaps even preferred, under the circumstances. Because "a party cannot request a certain action of the trial court and then argue on appeal that the action was error," *People v McCray*, 210 Mich App 9, 14; 533 NW2d 359 (1995), this issue was waived.

But, even if this issue had not been waived and defendant's on-the-record personal waiver was required to waive his right to be physically present during his sentencing, defendant has not demonstrated error entitling him to resentencing. See and compare *People v Anderson*, 341 Mich App 272, 283-288; 989 NW2d 832 (2022), held in abeyance for *People v Enciso*, 509 Mich 937; 972 NW2d 49 (2022).[3] The record reflects that defendant had ample opportunity to review the

---

[3] We initially held defendant's case in abeyance for *Enciso*. *People v Fraly*, unpublished order of the Court of Appeals, entered April 13, 2023 (Docket No. 361132). Thereafter, our Supreme Court

presentence report and discuss it with counsel. Defense counsel successfully challenged certain information in the PSIR and the scoring of a prior record variable as well as two offense variables, reducing the minimum recommended sentence under the guidelines. Counsel also ably advocated for defendant and defendant provided his own allocution. Given this record, defendant has not shown error requiring resentencing. *Anderson*, 341 Mich App at 283-288.

## II.  OV SCORING

This Court reviews the trial court's factual determinations at sentencing for clear error. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. See also *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017).

A sentencing court must consult the advisory sentencing guidelines and assess the highest number of possible points for all applicable offense variables. *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). The sentencing offense determines which offense variables are to be assessed, and the appropriate offense variables are generally assessed by reference to the sentencing offense. *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008). The trial court's factual determinations as to its offense-variable assessments must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170, 172 (2012) (quotation marks and citation omitted). The sentencing court may also rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable. *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021).

Additionally, "[a] defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A trial court relies on inaccurate information when it consults an inaccurate guidelines range. *Id*. at 89 n 7.

### A.  OV 4

OV 4 requires the sentencing court to assess ten points when a crime victim suffers "[s]erious psychological injury requiring professional treatment . . . ." MCL 777.34(1)(a). "[T]he fact that treatment has not been sought is not conclusive." MCL 777.34(2). In this case, the sentencing court assessed 10 points.

Defendant argues that there was no evidence of serious psychological injury resulting from the 2018 incident that formed the basis for his plea. Defendant correctly notes that "[t]he trial court may not simply assume that someone in the victim's position would have suffered

_____

denied leave in *Enciso*, ___ Mich ___; 989 NW2d 243 (Docket No. 162311), and will issue an order on the pending application for leave to appeal in *Anderson*.

psychological harm." *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). At sentencing, however, the trial court stated that defendant's "course of conduct" produced psychological injury, and, at a later motion hearing, added that the victim's psychological injury could not be attributed to any individual incident.

During the preliminary examination, the victim recounted defendant's sexual abuse from the ages of 11 to 18. The victim testified that he eventually told his then-girlfriend about the abuse, but he told no one else. The victim explained that he was afraid because defendant had told the victim that defendant would be jailed and the victim's younger brother would lose his father if defendant's actions were revealed. The victim's then-girlfriend encouraged the victim to disclose the abuse because it was "killing" him to internalize it. The victim testified that he was "haunt[ed]" daily and felt constant stress and depression. Persistent fear, depression, and stress are serious psychological injuries that may well necessitate professional treatment. And, even though the victim was not asked to specify his level of emotional turmoil relative to each assaultive episode, he reported experiencing continuous serious and damaging conditions arising from defendant's sexual abuse, which included the sentencing offense. See e.g., *People v Armstrong*, 305 Mich App 230, 247-248; 851 NW2d 856 (2014). Accordingly, the trial court did not clearly err when it assessed 10 points for OV 4 based on the victim's testimony.

## B. OV 10

Ten points must be assessed when an "offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). An " '[a]buse of authority status' means a victim was exploited out of fear or deference to an authority figure, including, but not limited to, a parent, physician, or teacher." MCL 777.40(3)(d). But "[t]he mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability." MCL 777.40(2). "Exploit" means to "manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). "Vulnerability" is "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). Proof of both the victim's vulnerability and the defendant's exploitation are required to assess points for OV 10. *People v Cannon*, 481 Mich 152, 159; 749 NW2d 257 (2008). In this case, the trial court determined a 10-point score was warranted.

Defendant argues that there was insufficient evidence that the victim was vulnerable or that defendant exploited him given that their familial relationship did not necessarily satisfy either condition. We disagree.

The victim had a developmental disability and testified that he was in special-education classes. Defendant was the victim's father, and, therefore, in a position of authority over the victim. Defendant's sexual abuse spanned years and he normalized it, telling the victim that it "was okay" because defendant's uncle had engaged in the same conduct. In addition to defendant's sexual abuse, there was physical abuse and stalking. And the PSIR reflects that the victim was diagnosed with post-traumatic stress disorder. Accordingly, there was evidence that the victim was vulnerable and that defendant exploited the victim's vulnerability, including his mental disability and the parties' domestic relationship, or that defendant abused his authority status. See

MCL 777.40(1)(b) and (3)(b)-(d). Therefore, the trial court did not err by assessing 10 points for OV 10.

## C. OV 13

A sentencing court is required to assess 25 points for OV 13 when the sentencing "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). The court must consider "all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). A court may consider uncharged offenses so long as once the information is challenged, the facts are substantiated by a preponderance of the evidence. *People v Golba*, 273 Mich App 603, 614; 729 NW2d 916 (2007). The trial court scored 25 points for OV 13 because the victim testified about defendant's prior sexual assaults.

The victim testified that defendant's sexual penetrations occurred about twice a week beginning at age 11, then decreased to once a month until the victim refused him during his senior year of high school.[4] The victim's mother testified that on the same day that the victim disclosed defendant's abuse to her, she went to defendant's job site. She told defendant that they needed to talk and he asked about what. When the victim's mother said the victim's name, defendant repeatedly apologized and said he "didn't mean to do it." She asked what defendant had done and he admitted touching the victim, penetrating the victim, and "having oral." Defendant reminded the victim's mother that his uncle had done the same thing to him and told her that he had shared that information with the victim.[5] The PSIR reflects that defendant later sent texts to others about ending his life and called a suicide hotline before checking himself into a medical center. The PSIR also reflects that after agreeing to a police interview, defendant initially claimed that he did not recall "this happening." Later, however, defendant described a single incident of fellatio that he described as being initiated by the victim. Later still, defendant described a second incident, claiming that he could not recall the details. Defendant then described a third incident, the basis for his subsequent plea. The incidents defendant described occurred with the victim over the span of two years. Notably, three counts of CSC-I against defendant were dismissed in the plea deal. Given the victim's and his mother's testimony, there was a preponderance of evidence in the record that sexual abuse occurred at least twice in the five years preceding the sentencing offense. Therefore, the trial court did not err in assessing 25 points for OV 13.

---

[4] Defendant's plea was based on an incident that occurred in 2018 when the victim was either 17 or 18 and defendant was 47 or 48. It was undisputed that there were several months in 2016 that defendant lived outside the family home.

[5] During a later conversation with defense counsel, the victim's mother reported that defendant claimed that he woke up and the victim, who was then nine years old, was touching and performing fellatio on him.

The victim's mother and defendant also later spoke during a recorded jailhouse phone call. Defendant was crying and began to claim that he had not done anything to the victim. The victim's mother told him that he "did so something," but defendant interjected and directed her to "stop" and not "talk about it on the phone" after the victim's mother used the words "[y]ou admitted."

## III.  PSIR ACCURACY

"[A] sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997).  "[T]he use of inaccurate information at sentencing may violate defendant's constitutional right to due process." *People v Hoyt*, 185 Mich App 531, 533; 462 NW2d 793 (1990).

"When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR . . . ." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).  "Because the Department of Corrections makes critical decisions concerning a defendant's status on the basis of information contained in the PSIR, the PSIR should accurately reflect any determination the sentencing judge has made regarding the accuracy or relevance of its information." *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009).  The following procedure is used to resolve challenges to the accuracy of the PSIR:

> A sentencing court must respond to challenges to the accuracy of information in a presentence report; however, the court has wide latitude in responding to these challenges.  The trial court may determine that the challenged information is accurate, accept the defendant's version, or disregard the challenged information as irrelevant.  If the court chooses to disregard the challenged information, it must indicate that it did not consider the information when fashioning the sentence and it must strike the information from the PSIR. [*People v Lucey*, 287 Mich App 267, 275; 787 NW2d 133 (2010) (quotation marks and citations omitted).]

This Court reviews "a trial court's response to a claim of inaccuracy in the PSIR for an abuse of discretion," *Lucey*, 287 Mich App at 275, and the trial court's factual findings at sentencing for clear error, *Hardy*, 494 Mich at 438.

In this case, defendant argued that the information in the PSIR should not reflect information in the police report about any instances of CSC-I, but rather should be limited in scope to information pertaining to the incident underlying his plea.  The trial court replied, "I don't think we're limited to only those bare minimum things the defendant admitted at sentencing," and added that a police report "can be used as a piece of evidence to write the presentence report, as can other hearsay evidence."[6]

On appeal, defendant does not specify any inaccuracies in the agent's description of the offense of the PSIR, which appears to reflect the police investigation of the incident, as well as

---

[6] At the initial sentencing hearing, defense counsel asked the court to supplement the PSIR to reflect that defendant denied the victim's allegations that the sexual assaults occurred from the time the victim was 11 until he was 18, and to add that defendant stated that he permitted his 18-year-old son to perform fellatio.  The trial court rejected counsel's request, adding that defendant "clearly did some of this" and that it would not make "a change that's clearly untrue."  Defendant's description of the offense was included in the PSIR and he maintained that the victim initiated the incident.

testimony from the preliminary examination. The information regarding what the victim, his mother, and defendant told the investigating officer is consistent with the victim's and the victim's mother's testimony during the preliminary examination.

The PSIR "is an information-gathering tool for use by the sentencing court," and "[t]herefore, its scope is necessarily broad." *Morales v Mich Parole Bd*, 260 Mich App 29, 45-46; 676 NW2d 221 (2003). "The [PSIR] has been widely regarded as an effective method of supplying information essential to an informed sentencing decision." *People v Lee*, 391 Mich 618, 635; 218 NW2d 655 (1974). Furthermore, our Supreme Court has opined that "it would [not] be a wise policy to restrict the sentencing judge to the information admissible in open court alone." *Id*. at 639. "The question of sentencing is properly a matter for the exercise of judicial discretion, and an informed exercise of that discretion requires an individualized factual basis, such as is provided by the presentence report." *Id*. at 639.

Defendant offers no legal support for the proposition that PSIR information must be restricted to the sentencing offense and exclude information from police reports. In fact, "there are no formal limitations on the contents of the presentence report," other than those "dictated by due process." *Id*. at 636. And "the presentence investigation report must include 'a complete description of the offense and the circumstances surrounding it, . . . information concerning the financial, social, psychological, or physical harm suffered by any victim of the offense, . . . any statement the defendant wishes to make . . . [and] any other information that may aid the court in sentencing." *Morales*, 260 Mich App at 46, quoting MCR 6.425(A). "A judge preparing to sentence a defendant may consider comments made by the defendant to the probation officer during the presentence interview in addition to evidence adduced at trial, public records, *hearsay* relevant to the defendant's life and character, and other criminal conduct for which the defendant has not been charged or convicted." [7] *Morales*, 260 Mich App at 46 (emphasis added). See also MRE 1101(b)(3) (the rules of evidence, other than those with respect to privileges, do not apply to sentencing hearings).

In this case, the sentencing offense was the culmination of years of defendant's systematic abuse. MCR 6.425(A)(1)(b) requires that the PSIR include "a complete description of the offense and the circumstances surrounding it." See also MCL 771.14(1) ("[T]he probation officer shall inquire into the antecedents, character, and circumstances of the person, and shall report in writing to the court."). Defendant's ongoing exploitation of the victim constituted the circumstances surrounding the sentencing offense, and it was important, and proper, for the PSIR to contain this information, including hearsay from a police report, for use by the sentencing court before exercising its sentencing discretion.

## IV. CRUEL OR UNUSUAL PUNISHMENT

SORA requires defendant to register as a sex offender for the entirety of his life after he was convicted of CSC-III, MCL 750.520d(1)(d), a "Tier III offense" under the statute,

---

[7] But a defendant is presumed innocent of any charge of which a jury has found the defendant not guilty, and thus, the trial court may not consider acquitted conduct as an aggravating factor. *People v Beck*, 504 Mich 605, 626-627; 939 NW2d 213 (2019).

MCL 28.722(v)(*iv*). MCL 28.725(13). Defendant argues that the inclusion of lifetime sex-offender registration in his sentence violated his constitutional protection against cruel or unusual punishment. The trial court denied defendant's motion in the absence of appellate authority holding that lifetime registration was unconstitutional in this regard.

The United States Constitution prohibits "cruel *and* unusual punishments." US Const, Am VIII (emphasis added).[8] The Michigan Constitution prohibits "cruel *or* unusual punishment." Const 1963, art 1, § 16 (emphasis added).[9] Because Michigan's Constitution offers broader protection than the Eighth Amendment, "[i]f a punishment 'passes muster under the state constitution, then it necessarily passes muster under the federal constitution.' " *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011), quoting *People v Nunez*, 242 Mich App 610, 618 n 2; 619 NW2d 550 (2000).

"Statutes are presumed to be constitutional and must be so construed unless their unconstitutionality is readily apparent." *People v Rogers*, 249 Mich App 77, 94; 641 NW2d 595 (2001). The party challenging a statute's constitutionality "has the burden of proving its invalidity." *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). A facial challenge to a statute asserts that there is no set of circumstances under which the statute is valid. *People v Wilder*, 307 Mich App 546, 556; 861 NW2d 645 (2014). An as-applied challenge to a statute requires a court to analyze whether the statute led to a denial of a specific right in light of the facts developed in the particular case. *Id.*

In deciding if punishment is cruel or unusual under the Michigan Constitution, this Court "look[s] to the gravity of the offense and the harshness of the penalty, comparing the penalty to those imposed for other crimes in this state as well as the penalty imposed for the same offense by other states and considering the goal of rehabilitation." *People v Poole*, 218 Mich App 702, 715; 555 NW2d 485 (1996).

In our prior decisions, this Court held that SORA registration was not unconstitutionally cruel or unusual punishment because it was not punishment, but a civil regulatory scheme designed to advance the state's legitimate interest in protecting the public from sex offenders. See e.g., *People v Costner*, 309 Mich App 220, 232-233; 870 NW2d 582 (2015); *People v Fonville*, 291 Mich App 363, 379-381; 804 NW2d 878 (2011). In *People v Betts*, 507 Mich 527, 562; 968 NW2d 497 (2021), however, our Supreme Court determined that SORA's registration requirements were criminal punishments in considering whether retroactive application of the 2011 version of SORA violated the Ex Post Facto Clauses of the United States and Michigan Constitutions. And, thereafter, this Court determined that a fifteen-year registration requirement, as retained in the 2021 version of SORA, remained a criminal punishment. *People v Lymon*, ___ Mich App ___,___;

---

[8] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." US Const, Am VIII.

[9] "Excessive bail shall not be required; excessive fines shall not be imposed; cruel or unusual punishment shall not be inflicted; nor shall witnesses be unreasonably detained." Const 1963, art 1, § 16.

___ NW2d ___ (2022) (Docket No. 327355); slip op at 18, lv den as to appellant, but lv granted as to cross-appellant ___ Mich ___; 983 NW2d 82 (2023).[10]

In *Lymon*, after considering "the gravity of the offense, the harshness of the penalty, and the goal of rehabilitation," this Court "conclude[d] that requiring [the defendant] to register as a sex offender for 15 years is cruel or unusual punishment because it is unjustifiably disproportionate to the offense committed [i.e., unlawful imprisonment]." *Id.*, slip op at 22. Even so, this Court made clear that it did "not address whether registration under SORA was cruel or unusual punishment per se, but rather whether it [was] cruel or unusual punishment for a crime [like unlawful imprisonment] that lack[ed] a sexual component and [was] not sexual in nature." *Id.*, slip op at 18.

This Court soon addressed "whether mandatory lifetime registration under SORA necessarily constitutes cruel or unusual punishment" in a case involving a defendant convicted of CSC-I against an adult victim. *People v Jarrell*, ___ Mich App ___, ___; ___ NW2d ___ (2022), lv pending. After reviewing the appropriate factors, this Court held that lifetime registration under SORA was not cruel or unusual as applied to such a defendant. *Id.*[11]

---

[10] Our Supreme Court directed the parties to "address whether requiring a defendant to register as a sex offender under [SORA], for a non-sexual crime, such as unlawful imprisonment of a minor, constitutes cruel or unusual punishment under Const 1963, art 1, § 16 or cruel and unusual punishment under US Const, Am VIII." *Lymon*, ___ Mich ___, ___.

[11] Numerous unpublished cases have also rejected the argument that lifetime SORA registration is cruel or unusual. *People v Henderson*, unpublished per curiam opinion of the Court of Appeals, issued May 18, 2023 (Docket No. 358579) (the defendant's convictions included three counts of CSC-I involving a child under 13 years of age); *People v Pool*, unpublished per curiam opinion of the Court of Appeals, issued April 20, 2023 (Docket No. 358547) (the defendant was convicted of CSC-I, involving a victim under 13 years of age, and CSC-III, MCL 750.520d(1)(a), involving a victim between the ages of 13 and 16); *People v Swoffer-Sauls (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued April 6, 2023 (Docket No. 353827), lv pending (the defendant convicted of assault with the intent to commit sexual penetration, MCL 750.520g(1), and fourth-degree CSC, MCL 750.520e(1)(b), among other offenses, against an adolescent girl); *People v Kardasz*, unpublished per curiam opinion of the Court of Appeals, issued September 22, 2022 (Docket No. 358780), lv pending (the defendant was convicted of CSC-I involving his 5-year-old daughter); *People v Fabela (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued June 23, 2022 (Docket No. 337365), lv pending (the defendant was convicted of two counts of CSC-III, MCL 750.520d(1)(a), involving the 15-year-old daughter of the defendant's friend); *People v Evans*, unpublished per curiam opinion of the Court of Appeals, issued April 21, 2022 (Docket No. 353139), held in abeyance ___ Mich ___, ___; 983 NW2d 77 (2023) (the defendant was convicted of CSC-I involving his fiancée's 13-year-old daughter); *People v Ringle*, unpublished per curiam opinion of the Court of Appeals, issued November 18, 2021 (Docket No. 352693), held in abeyance ___ Mich ___; 983 NW2d 78 (2023)

-10-

## A. GRAVITY OF THE OFFENSE/HARSHNESS OF THE PENALTY

In this case, defendant argues that a lifetime of having to register as a sex offender, with the associated stigma, is unduly harsh when considered in light of the lack of demonstrated risk that he represents in the community. In support, defendant cites *People v Dipiazza*, 286 Mich App 137, 140; 778 NW2d 264 (2009), in which an 18-year-old man was sentenced to register as a sex offender for 10 years as a result of his conviction of attempted CSC-III involving a consensual sexual relationship with a girl who was nearly 15-year old. This Court held that the defendant's inclusion on the registry, and the related stigma, was too "harsh" in comparison to the "not very grave" circumstances of the crime, including the small age difference, the consensual nature of the relationship that was condoned by the girl's parents, and the pair's later marriage. *Id.* at 154. None of the mitigating considerations present in *Dipiazza* are present here. Instead, the instant case involved nonconsensual sexual assaults by defendant against his 11-year-old son over the course of seven years.

Defendant next argues that lifetime registration was unduly harsh because he had not been individually assessed as presenting a serious risk of reoffending. But the Legislature has eschewed such individual assessments and established defendant's risk of reoffending as a matter of general policy. See *Fonville*, 291 Mich App at 380 (it is necessary specially to protect society from individuals who endanger minor victims by committing an offense listed in SORA, quoting MCL 28.721a.).[12] Defendant offers no rationale to differentiate him from this group of criminal offenders that the Legislature has determined to pose a special danger to the community. The Legislature's determination that defendant, by virtue of his conviction, belongs to this group subjected to lifetime sex-offender registration conflicts with defendant's attempt to minimize the gravity and severity of his offense. Further, the evidence showed that defendant, rather than expressing an understanding of the harm that he caused, soon attempted to shift responsibility to the victim. For these reasons, defendant has failed to show that his lifetime SORA registration requirement was unduly harsh in light of the gravity of his offense.

---

(the defendant was convicted of three counts of second-degree CSC, MCL 750.520c(1)(a), involving his stepdaughter who was under 13).

[12] MCL 28.721a provides:

> The legislature declares that the sex offenders registration act was enacted pursuant to the legislature's exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.

## B.  OTHER MICHIGAN CRIMES

Defendant argues that lifetime SORA registration is disproportionate to sentences for other crimes in Michigan.  Proportionality in the context of a legislatively mandated sentence "concerns whether the punishment concededly chosen or authorized by the Legislature is so grossly disproportionate as to be unconstitutionally 'cruel or unusual.' " *People v Bullock*, 440 Mich 15, 34 n 17; 485 NW2d 866 (1992).  "Legislatively mandated sentences are presumed to be proportionate and valid, and a proportionate sentence is not cruel or unusual." *Jarrell*, ___ Mich App at ___; slip op at 11 (quotation marks and citations omitted).

Defendant protests that only CSC sentences subject a defendant to post-incarceration lifetime punishment.  But many other offenses have statutorily mandated penalties.[13]  And, in our view, "[t]he unique ramifications of sexual offenses against a child preclude a purely qualitative comparison of sentences for other offenses to assess whether mandatory" registration is unduly harsh.  *Benton*, 294 Mich App at 206.  Indeed, CSC offenses "violate[] deeply ingrained social values of protecting children from sexual exploitation.  Even when there is no palpable physical injury or overtly coercive act, sexual abuse of children causes substantial long-term psychological effects, with implications of far-reaching social consequences." *Id*.  Thus, the grave nature of sexual offenses justifies lifetime SORA registration.

## C.  OTHER STATES

Defendant also argues that mandatory registration without an individual assessment of risk is unduly harsh when compared to the practices of other states.  This Court specifically rejected this argument in *Jarrell*, ___ Mich App at ___; slip op at 11.  Michigan is hardly unique in requiring sex offenders to register for life, and requiring lifetime compliance with SORA is justified in this situation.

## D.  REHABILITATION

In *Jarrell*, this Court concluded that while a defendant's SORA obligations will not assist his rehabilitation, "the other three factors strongly support that such a punishment is neither cruel nor usual. . . ." *Id*.  For these reasons, defendant has not demonstrated that SORA provisions requiring his lifetime compliance with the registry are cruel or unusual under the Michigan Constitution, facially, or as applied.  And because the statute survives defendant's challenge under

---

[13] *Ringle*, unpub op at 4 n 1, set forth some examples:

> See, e.g., MCL 750.520b(2)(b) and (c) (mandating minimum terms of imprisonment for a defendant convicted of CSC-I against a victim younger than 13 years of age); MCL 769.12(1)(a) (mandating a 25-year minimum term of imprisonment for certain fourth-offense habitual offenders); MCL 750.227b(1) and (2) (mandating terms of imprisonment for a defendant who possessed a firearm during the commission of a felony); and MCL 750.316(1) (mandating lifetime imprisonment for a defendant convicted of first-degree murder).

the Michigan Constitution, "it necessarily passes muster under the federal constitution." *Benton*, 294 Mich App at 204, quoting *Nunez*, 242 Mich App at 618 n 2.

## V. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant, in his Standard 4 brief, argues that his trial counsel provided ineffective assistance for several reasons. Initially, we note that, under MCR 7.205(E)(4), an appeal granted by leave is limited to the issues raised in the application and supporting brief. In fact, our order granting leave in this case was "limited to the issues raised in the application and supporting brief." *People v Fraly*, unpublished order of the Court of Appeals, entered June 8, 2022 (Docket No. 361312). Nothing in Administrative Order No. 2004-6, 471 Mich c, cii (2004), excludes Standard-4 briefs from the limitation imposed under MCR 7.205(E)(4). On the other hand, the purpose of a Standard-4 brief is to raise a claim or claims on appeal that counsel declined to present. AO 2004-6, Standard 4. And that purpose would be defeated if a defendant could not file a Standard-4 brief following an order granting leave to appeal. Furthermore, nothing in MCR 7.205(E)(4) precludes us from discretionary review of the issues not raised in the application, and, in the interest of completeness, we will address defendant's claims.

A criminal defendant has the right to the assistance of counsel for his defense. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). To obtain relief on the basis that counsel was ineffective, the "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. In reviewing "whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52. Counsel has a " 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *Id*., quoting *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 US at 691. And "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id*. Importantly, "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first asserts that his guilty plea was entered "due to the manipulation and coercion of trial counsel" after she dismissed defendant's other sons as witnesses at trial and failed to investigate Children's Protective Services (CPS) records. The record does not support defendant's assertions.

On August 31, 2020, the court scheduled a four-day trial beginning on September 29, 2020. At that point, the prosecution's final plea offer was a plea to three counts of third-degree CSC.[14]

---

[14] Thus, defense counsel later successfully negotiated a plea to a single-count of CSC-III under a factual scenario that reduced defendant's potential minimum sentence and avoided the 25-year

On August 27, 2020, defense counsel filed a response to the prosecution's request for discovery, identifying defendant's sons as trial witnesses along with the keeper of the records for the Department of Health and Human Services. Defense counsel further identified the CPS records as a document that she intended to introduce at trial.[15] Moreover, at the September 9, 2020 plea-taking, defendant was placed under oath and stated that he had reviewed the facts and charges with defense counsel and discussed any possible defenses that he had. Defendant also said he was satisfied with counsel's advice. And defendant affirmed that it was his "own free choice to plead guilty" and that he understood he was giving up any claim that his plea was involuntary. Defense counsel likewise denied being "aware of any inducements offered to [] defendant that ha[d] not been disclosed" on the record. Defendant then placed the factual basis for his guilty plea on the record. Because defendant's assertions pertaining to defense counsel are contradicted by the record below, he has not established the factual predicate for this claim of ineffective assistance of counsel. *Hoag*, 460 Mich at 6. See also *People v White*, 307 Mich App 425, 431; 862 NW2d 1 (2014) (When a "defendant's offer of proof . . . is inconsistent with [his] testimony during the plea hearing," a trial court does not abuse its discretion in denying his request for an evidentiary hearing.); *People v Serr*, 73 Mich App 19, 31; 250 NW2d 535 (1976) (The plea-taking court did not abuse its discretion in refusing to set aside a plea after it barred defense counsel's attempt to contradict or deny his earlier statements placed on the record during the plea-taking.).

Defendant next contends that trial counsel informed him that she had received funding to hire a private investigator to serve defendant's sons, talk to them, and prepare a report regarding his investigation.[16] According to defendant, counsel informed him that she had his sons removed from the witness list because they told the investigator that they "hated" defendant and "never wanted to talk to him again." After his incarceration, however, defendant asserts that he received "communication" from his wife and sons that his attorney had lied to him because a private investigator " 'never' came to . . . [the] house and asked them any questions nor did Defendant's two sons ever tell any private investigator, detective or anyone that they hated Defendant or never wanted to talk to him again." As already discussed, however, defense counsel identified defendant's sons as trial witnesses in her response to the prosecution's request for discovery. Nowhere does the record reflect that counsel struck these witnesses. Defendant has presented no affidavit from his sons or himself in support of his assertions nor has defendant provided the

---

mandatory-minimum sentence defendant would have received had he been convicted on any of the original CSC-I charges.

[15] Defendant asserts that he insisted that counsel obtain these records and counsel retorted "that she did not need to review a copy of the [] report, [and] that it would not matter." Defendant's assertions are belied by counsel's response to the prosecution's motion for discovery and counsel referencing CPS involvement with the Fraly family during the preliminary examination and at the adjourned sentencing.

[16] The trial court denied defense counsel's ex parte and under seal motion to appoint an expert, noting that no specific expert was identified. The court offered that approaching the funding unit or its representative was the appropriate route to secure such services via the indigent defense program.

"communication" he claims to have received. Given this, we decline defendant's request to expand the current record at this stage and conclude that he has not carried his burden of establishing the factual predicate for his claim. *Hoag*, 460 Mich at 6.

Defendant also alleges that counsel informed him that she had received $1,500 in funding to hire an expert witness and that counsel insisted that this witness was "the best expert witness in the State of Michigan." Defendant further asserts that defense counsel never identified this expert, never disclosed the expert's field of expertise, and never revealed the means by which the expert opined on the victim's credibility. Defense counsel, however, represented "that this expert witness told her that[] 'there is no way that the plaintiff [the victim] was lying.' "[17] Defense counsel then allegedly told defendant that he had to accept the plea. In response, defendant insisted he was innocent and counsel informed him that she "was unwilling to pursue any review of Defendant's case" based upon the expert's conclusion.[18] In turn, defendant alleges that counsel's actions and deceit regarding the employment and opinion of this expert coerced his plea.

Defendant's assertions are in direct conflict with his under-oath admissions at the plea-taking about the full discussion of his defenses with counsel, his satisfaction with counsel's advice,[19] his acknowledgement regarding the lack of threats to induce his plea, his acknowledgment that it was his "free choice to plea guilty," and his statements providing a factual basis for his guilty plea consistent with what he initially told the police. *White*, 307 Mich App at 431; *Serr*, 73 Mich App at 31. On this record, defendant has not established the factual basis for this claim.[20]

---

[17] Under Michigan law, an expert is not permitted to "vouch for the veracity of a victim." *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995). See also *People v Beckley*, 434 Mich 691, 727-728; 456 NW2d 391 (1990) ("[A]ny testimony about the truthfulness of [the] victim's allegations against the defendant would be improper because its underlying purpose would be to enhance the credibility of the witness. To hold otherwise would allow the expert to be seen not only assessing specialized knowledge in terms of behavioral characteristics generally associated with the class of victims, but to possess some specialized knowledge for discerning the truth.").

[18] This appears to be at odds with defendant's later claim that counsel was ineffective because, despite her belief that the victim was lying, defense counsel advised defendant that if she failed to persuade a jury of that fact, defendant would be subject to the mandatory-minimum 25-year sentence if convicted of CSC-I, as charged.

[19] Defense counsel was defendant's second court-appointed counsel, and this was not the then 50-year-old defendant's first experience with the criminal justice system.

[20] Defendant attaches the trial court's order denying defense counsel's ex parte motion for funds to secure an expert, but nothing to show that defense counsel failed to pursue funding from her funding unit or its representative as suggested therein. To the contrary, defendant's earlier claim that counsel secured an investigator suggests counsel was successful in obtaining funding from an alternate source.

Defendant further contends that defense counsel "[f]ailed to object to the use of a prosecution's witness who provide[d] false testimony against" him, adding that counsel was ineffective for "failing to investigate evidence of [a] police report and medical records from [the] county jail that would have provided adequate and proficient documentation and verification of the witness testimony being false." More specifically, defendant asserts that his wife lied at the preliminary examination when she testified that: (1) she had informed CPS that defendant masturbated in front of his children and (2) she was tired of defendant "beating" the victim. Defendant alleges that he insisted counsel obtain the documents to impeach his wife, which counsel failed to do. Defendant further asserts that the victim in this case made a false police report against defendant in 2017 that the victim recanted. According to defendant, counsel failed to investigate this evidence as well and "blatantly stated to Defendant that he does not have a right to discredit the plaintiff [the victim]." However, in her response to the prosecution's discovery request, defense counsel identified the keeper of the records for the Grand Traverse Sheriff's Office as a trial witness and "GTSO Incident Reports" as documents "that defendant intends to introduce at trial." And, as already discussed, counsel also listed the CPS records as a document she intended to introduce at trial and she was clearly familiar with CPS's involvement with the Fraly family. Likewise, defense counsel's thorough cross-examination of the victim and his mother during preliminary examination refutes any suggestion that she would not discredit them if an opportunity presented itself. In light of this record, defendant has not met his burden of showing a factual predicate for this claim of ineffective assistance. *Hoag*, 460 Mich at 6.

Defendant also alleges that he was never shown his PSIR, never provided a copy of his PSIR, and never consulted regarding his PSIR's content.[21] The record refutes the first and third contentions and MCR 6.425(B) does not require a represented defendant to be provided with a copy of the PSIR. At the initial sentencing, the court asked whether counsel and defendant "had an opportunity to review" the PSIR. Defense counsel responded:

> Yes, your Honor, Mr. Fraly and I did have an opportunity to thoroughly review the report, as well as the guidelines scoring. There are a couple of factual corrections, there are numerous guidelines issues. I did pass along to both the prosecutor's

---

[21] In pertinent part, MCR 6.425(B) states:

> The court must provide copies of the presentence report to the prosecutor, and the defendant's lawyer, or the defendant if not represented by a lawyer, at a reasonable time, but not less than two business days, before the day of sentencing. The prosecutor and the defendant's lawyer, or the defendant if not represented by a lawyer, may retain a copy of the report or an amended report. If the presentence report is not made available to the prosecutor and the defendant's lawyer, or the defendant if not represented by a lawyer, at least two business days before the day of sentencing, the prosecutor and the defendant's lawyer, or the defendant if not represented by a lawyer, shall be entitled, on oral motion, to an adjournment of the day of sentencing to enable the moving party to review the presentence report and to prepare any necessary corrections, additions, or deletions to present to the court.

office and the Department of Corrections two days ago my objections to the scoring of the guidelines.

Counsel's affirmative response and subsequent objections at the initial and adjourned sentencing refute defendant's contrary claims. Because defendant has not established the factual predicate for his claim, he is not entitled to relief on these grounds, *Hoag*, 460 Mich at 6, and because defendant was not entitled to a copy under MCR 6.425, his remaining claim that counsel was ineffective in that regard is without merit.

Finally, defendant asserts that his plea was coerced "by means of lies and intimidation." Defendant again asserts that "at all times [he] has maintained his innocence" and before accepting the plea offer, he met with counsel, who told him about a plea offer made by the prosecutor to "58 months on a plea deal." Defendant claims that "counsel was adamant" that defendant accept this offer. Defendant, however, maintained his innocence. Counsel then explained that with defendant's health issues, the pandemic, and defendant's jail credit, defendant would spend 2½ to 3 years in prison and be paroled. On the other hand, counsel cautioned that if defendant rejected the plea and she could not establish at trial that the victim was lying, even if she knew he was, defendant would serve 25 years if convicted.

Again, defendant's claims are refuted by the record below. The only plea offer placed on the record was a dismissal of three CSC-I charges if defendant pleaded guilty to one count of CSC-III. Defense counsel confirmed that this was "an accurate statement of the plea agreement." Defendant, who was under oath, also agreed that the plea agreement was accurately stated. When the court asked if "anything [had] been promised to [defendant] or [if he] had been threatened in any way to get [him] to plead guilty," defendant responded: "No." And when the court inquired whether "it was [his] own free choice to plead guilty," defendant answered, "Yes." Defendant further understood that by pleading guilty, he would "give up any claim that there were promises or inducement offered to" him along with "any claim [that his] plea was not voluntary." Both counsel denied being "aware of any inducements offered to . . . defendant that have not been disclosed[.]" Given the evidence presented at the preliminary examination and defendant's admissions to police, defense counsel was not ineffective for advising defendant regarding the consequences of rejecting the plea offer in the event that the jury credited the victim's testimony. And, given defendant's under-oath admissions at the plea-taking, he understood that the prosecution's offer was not a sentence agreement or recommendation. Defendant has not established the factual basis for his claim of ineffective assistance of counsel on this record and we decline his request to remand for an evidentiary hearing. *Hoag*, 460 Mich at 6.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica

-17-