*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDREW MICHAEL SWOFFER-SAULS,

        Defendant-Appellant.

UNPUBLISHED
April 6, 2023

No. 353827
Alpena Circuit Court
LC No. 19-009297-FH

ON REMAND

Before: JANSEN, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

This matter returns to this Court on remand from our Supreme Court with directions to consider "defendant's argument that the imposition of lifetime registration as a sex offender violates the state prohibition on cruel or unusual punishment under Const 1963, art 1, § 16, or the federal prohibition on cruel and unusual punishment under US Const, Am VIII." *People v Swoffer-Sauls*, 978 NW2d 831 (2022). We declined to address the issue in defendant's first appeal, in which we affirmed defendant's convictions but remanded for resentencing, noting that defendant could raise the issue regarding lifetime sex offender registration on remand to the trial court for resentencing. On remand, we again affirm defendant's convictions, but remand for resentencing.

## I. BACKGROUND

Defendant was convicted by a jury of assault with intent to commit sexual penetration, MCL 750.520g(1), fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (sexual contact with force or coercion), felonious assault, MCL 750.81a, and stalking, MCL 750.411h. He was sentenced to 38 months to 10 years' imprisonment for the assault-with-intent conviction, 16 months to 2 years' imprisonment for the CSC-IV conviction, and 225 days each for the felonious assault and stalking convictions. The convictions arose out of the sexual assault of the complainant, an adolescent girl. This Court previously described the incident as follows:

-1-

The complainant, an adolescent female, went to the park with her sister and a friend to play basketball. She stopped at the home of an adolescent boy that she knew in an attempt to borrow his air pump to inflate her basketball. Defendant, whom the complainant had not previously met, also stayed at the home of the adolescent boy. The males invited the complainant into the home and into defendant's room under the guise that they would help with the basketball. According to the testimony, once in the bedroom, the door was shut, and the males threw condoms at the complainant and called her derogatory names, including sexually themed ones. They then struck her on the legs, attempted to force her to swallow a pill, forced her onto the bed, kicked her, and touched her breasts and buttocks. The complainant testified that they forced her legs open and touched her "everywhere," then defendant "tried going in [her] with [her] clothes" on, which the complainant resisted by curling into a ball, holding her arms around herself, and rolling her body. The complainant was able to get out of the home by saying she had to go to the bathroom, then hiding, then running out of the door. Once outside the home, the complainant encountered her sister and friend, who noted the bruises and hand marks on her legs, as well as her state of upset and difficulty communicating. The complainant's grandmother contacted the police, and the complainant was examined at the hospital. [*People v Swoffer-Sauls*, unpublished per curiam opinion of the Court of Appeals, issued March 24, 2022 (Docket No. 353827); unpub op at 1-2.]

As previously noted, defendant was convicted by a jury of assault with intent to commit sexual penetration, CSC-IV, felonious assault, and stalking. Along with sentencing him to prison for the convicted offenses, the trial court also imposed a requirement of lifetime sex offender registration under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*. Defendant appealed as of right, and we affirmed his convictions and remanded for resentencing, declining to address whether lifetime sex offender registration constitutes cruel and unusual punishment under the Michigan or federal constitutions. *Swoffer-Sauls*, unpub op at 6. Defendant appealed to our Supreme Court, which has now remanded to this Court with directions to consider this argument. *Swoffer-Sauls*, 978 NW2d 831.

## II. ANALYSIS

Defendant argues that lifetime sex offender registration as a result of his conviction violates the state and federal constitutional prohibitions against cruel and unusual punishment. We disagree.

Generally, "[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant did not argue that his sentence to lifetime registration as a sex offender was unconstitutionally cruel and unusual in the court below. Thus, this issue has not been preserved for appeal, and our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (citation omitted). Reversal is warranted only if plain error resulted in the conviction of an innocent defendant, or if "the error

-2-

seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id.*

SORA, MCL 28.721 *et seq.*, requires defendant to register as a sex offender for the rest of his life, including after his release from prison, because he was convicted of assault with intent to commit sexual penetration, MCL 750.520g(1), which is a Tier III offense under the statute. MCL 28.722(v)(*iv*); MCL 28.725(13). "[R]egistration under SORA imposes affirmative obligations amounting to an onerous burden on registrants." *Lymon*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 327355); slip op at 19, lv gtd 983 NW2d 82 (2023). Tier III offenders must report any changes to their residence, employment, e-mail address, and telephone number, MCL 28.725(1)-(2), and must report in person four times per year to verify their residence, MCL 28.725a(3)(c). Defendant's personal information, including a physical description and a photograph, as well as his home address and license plate number, must also be made available to the public. See MCL 28.728(2).

Defendant says that under the circumstances presented in this case, lifetime sex offender registration constitutes cruel and unusual punishment. Both the state and federal constitutions prohibit such punishments. Specifically, the United States Constitution prohibits "cruel *and* unusual punishments," US Const, Am VIII (emphasis added), and similarly, the Michigan Constitution prohibits "cruel *or* unusual punishment," Const 1963, art 1, § 16 (emphasis added). The protection against cruel or unusual punishment in the Michigan Constitution is broader than the protection in the Eighth Amendment; consequently, if a penalty "passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (quotation marks and citation omitted).

This Court has previously held that SORA was not unconstitutionally cruel because the registration requirement was not itself a punishment, and was instead a civil regulatory scheme designed to advance the state's interest in protecting the public from sex offenders. See *People v Bosca*, 310 Mich App 1, 71-72; 871 NW2d 307 (2015); *People v Costner*, 309 Mich App 220, 233; 870 NW2d 582 (2015); *People v Fonville*, 291 Mich App 363, 379-381; 804 NW2d 878 (2011). However, in *People v Betts*, 507 Mich 527, 562; 968 NW2d 497 (2021), our Supreme Court recently determined that the registration requirements under SORA *do* constitute criminal punishment, while considering the broader question of whether retroactive application of the 2011 version of SORA violated the Ex Post Facto Clause of the United States Constitution.

To determine whether a punishment is cruel or unusual under the Michigan Constitution, courts assess whether it is "unjustifiably disproportionate" to the offense committed by considering four factors: (1) the harshness of the penalty compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed for other offenses in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the goal of rehabilitation. *People v Bullock*, 440 Mich 15, 30, 33-34; 485 NW2d 866 (1992). We will examine each in turn.

A. HARSHNESS OF THE PENALTY

Defendant contends that lifetime sex offender registration was unduly harsh, given the lack of a demonstrated risk that he represents in the community. To support his argument, defendant

cites *People v DiPiazza*, 286 Mich App 137, 140; 778 NW2d 264 (2009). In *DiPiazza*, an 18-year-old defendant was convicted of attempted third-degree criminal sexual conduct (CSC), MCL 750.92, MCL 750.520d(1)(a), after a teacher discovered that he was in a relationship with a nearly 15-year-old girl. *Id*. at 139-140. The defendant was sentenced to register as a sex offender for 10 years as a result of the conviction. *Id*. at 140. This Court held that a 10-year registration requirement was too harsh in comparison to the "not very grave" circumstances of the crime, considering the relatively minimal age difference and the consensual nature of the relationship— of which the parents approved. *Id.* at 154. The Court also noted that the defendant and the alleged victim later married. *Id*. Given the starkly different nature of the present case, we find *DiPiazza* inapposite. In contrast to *DiPiazza*, which involved a statutory rape situation between two consenting teenagers, the instant case involved a violent, nonconsensual, and humiliating sexual assault by defendant against the victim. Defendant offered to help the complainant as a pretext for luring her to a room where he forcibly detained her with the assistance of another and violently sexually assaulted her until she escaped. The offense here was far more severe than the offense in *DiPiazza*; consequently, we do not find lifetime sex offender registration unduly harsh in this instance.

Defendant also argues that lifetime registration is unduly harsh because the penalty was imposed without an individualized assessment of his risk for reoffending. However, defendant overlooks the fact that the Legislature has rejected such individualized assessments. MCL 28.721a states:

> The [L]egislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.

Such language makes it clear that the Legislature enacted SORA to prevent further crime by persons "who have engaged in sexually predatory conduct and who, by virtue of relatively high recidivism rates among such offenders, are recognized to be resistant to reformation and deemed to pose potential danger of repeat misconduct . . . ." *People v Pennington*, 240 Mich App 188, 195; 610 NW2d 608 (2000) (quotation marks and citation omitted; alteration in original). At no point has the Legislature evinced an intent to impose individualized assessments of sex offenders before lifetime registration is imposed. The Legislature's determination that defendant, by virtue of his conviction, belongs to a group that is subjected to monitoring conflicts with his attempt to minimize the severity of his offense, and he has ultimately failed to show that his sentence of lifetime SORA compliance was unduly harsh.

## B. CRIMINAL PENALTIES IN MICHIGAN

Defendant next argues that sentencing him to lifetime sex offender registration is a disproportionate penalty when compared to sentences for other crimes in Michigan. Proportionality in the context of a legislatively mandated sentence "concerns whether the punishment concededly chosen or authorized by the Legislature is so grossly disproportionate as

to be unconstitutionally cruel or unusual." *Bullock*, 440 Mich at 34-35 n 17 (quotation marks omitted). Defendant protests that only CSC sentences subject a defendant to lifetime punishments that last even after a defendant has been released from prison. However, contrary to this contention, many other offenses have statutorily mandated penalties in Michigan. See, e.g., MCL 750.520b(2)(b) and (c) (mandating minimum terms of imprisonment for a defendant convicted of CSC-I against a victim younger than 13 years of age); MCL 769.12(1)(a) (mandating a 25-year minimum term of imprisonment for certain fourth-offense habitual offenders); MCL 750.227b(1) and (2) (mandating terms of imprisonment for a defendant who possessed a firearm during the commission of a felony); MCL 750.316(1) (mandating life imprisonment for an adult defendant convicted of first-degree murder).

CSC and other sex offenses are somewhat unique, and the "ramifications of sexual offenses against a child preclude a purely qualitative comparison of sentences for other offenses" when assessing whether mandatory registration is unduly harsh. *Benton*, 294 Mich App at 206. Here, defendant committed a CSC offense against a child, and CSC offenses against children in particular "violate[] deeply ingrained social values of protecting children from sexual exploitation." *Id*. Overall, the grave nature of sex offenses and "the judicially recognized recidivism rate for these offenders," justifies lifetime monitoring as "not clearly excessive or grossly disproportionate." *People v Hallak*, 310 Mich App 555, 576; 873 NW2d 811 (2015) rev'd on other grounds by 499 Mich 879 (2016).

## C. CRIMINAL PENALTIES IN OTHER STATES

Defendant also argues that Michigan's mandatory registration system is unduly harsh when compared to other states. The Massachusetts Supreme Court, for example, has ruled that a defendant convicted of a sex offense is required to register under a tiered system, but that the tier or level assigned to each defendant must be determined by an individualized evaluation. See *Moe v Sex Offender Registry Bd*, 467 Mass 598, 600-601; 6 NE3d 530 (2014). And in Arkansas, the mandatory registration requirements for sex offenders must be established on the basis of a recidivism assessment, which determines the level of information about the offender that may be disclosed to the public. *Weems v Little Rock Police Dept*, 453 F3d 1010, 1012-1013 (CA 8, 2006). However, it is significant that in both of these cases, compliance with the registry itself was mandatory. At least 10 states besides Michigan have determined that mandatory lifetime electronic monitoring of sex offenders was required to protect the public, *Hallak*, 310 Mich App at 575, 575 n 9, and further, the United States Supreme Court has observed that because of the perception of sex offenders as a serious threat, "every other State[] has responded . . . by enacting a statute designed to protect its communities from sex offenders and to help apprehend repeat sex offenders." *Conn Dep't of Pub Safety v Doe*, 538 US 1, 4; 123 S Ct 1160; 155 L Ed 2d 98 (2003). Michigan is far from unique in requiring sex offenders to register for life. Requiring lifetime compliance with SORA is justified in this situation.

## D. THE GOAL OF REHABILITATION

Defendant's final argument is that his sentence to a lifetime on the SORA registry is contrary to the goal of rehabilitation because he will suffer stigma interfering with his ability to acquire housing and employment. While it is plausible that defendant's presence on the registry will complicate aspects of his future life circumstances, those negative effects could be attributed to defendant having engaged in conduct resulting in convictions of offenses that happen to fall

under SORA's ambit, rather than to the registry itself. See *People v Tucker*, 312 Mich App 645, 661; 879 NW2d 906 (2015) (citing the United States Supreme Court's reasoning that the negative consequences sex offenders face flow from the conviction itself, not the registry). Defendant points out that in *Betts*, 507 Mich at 560-561, our Supreme Court noted that recent studies had suggested that recidivism rates for sex offenders might be lower than previously thought. Regardless, SORA was designed to have a deterrent effect by " 'preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders.' " *Bosca*, 310 Mich App at 66-67, quoting MCL 28.721a. Defendant's lifetime SORA requirement is not unjustifiably disproportionate because sex offender registration may deter defendant from recidivating in the future.

### III. CONCLUSION

Considering the factors discussed in *Bullock*, 440 Mich at 30, 33-34, defendant has not demonstrated that lifetime sex offender registration in compliance with SORA violated the proscription against cruel or unusual punishment set forth in the state constitution. We also note that since the statute survives defendant's challenge under the Michigan Constitution, "then it necessarily passes muster under the federal constitution." *Benton*, 294 Mich App at 204 (quotation marks and citation omitted). We thus decline to address whether the imposition of lifetime sex offender registration violates the Eighth Amendment to the United States Constitution.

Affirmed, but remanded for resentencing. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Michelle M. Rick